[Civ. No. 33973. First Dist., Div. One. June 26, 1975.]

GLENS FALLS INSURANCE COMPANY, Plaintiff and Respondent, v.
ELTON MICHAEL RICH, Defendant and Appellant;
HARRY E. DuBAY, Defendant and Respondent.

COUNSEL

Davis & Sauer, Norman A. Sauer and Robert L. Davis for Defendant and Appellant.

Bronson, Bronson & McKinnon and Paul H. Cyril for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

**MOLINARI, P. J.**—In this declaratory relief action brought by Glens Falls Insurance Company ("Glens Falls") against Harry E. DuBay ("DuBay"), its insured under a homeowner's insurance policy, and Elton Michael Rich ("Rich"), who was injured while riding as a passenger in DuBay's automobile as the result of the discharge of DuBay's shotgun, the question is whether the trial court erred in denying recovery to Rich under said policy on the ground that the accident arose out of the use of the automobile so as to cause it to come within the automobile exclusionary provision of said policy. We have concluded that the exclusionary clause is inapplicable and that therefore the policy affords insurance coverage to DuBay for any liability to Rich. Accordingly, the judgment must be reversed.

 The facts of this case are undisputed. On September 23, 1972, DuBay and Rich were on a hunting trip in Trinity County in a Travelall automobile owned by DuBay. The Travelall was being driven by DuBay and Rich was seated in the front seat. Two other passengers were seated in the back seat.

Earlier that day, at approximately 5:15 a.m., DuBay placed a loaded 12 gauge Winchester shotgun underneath the front seat of the Travelall. DuBay had put the safety on the shotgun.

At approximately 10:15 a.m., while driving on a logging road, DuBay and Rich saw a squirrel sitting on a stump. DuBay brought the vehicle to a stop. He stated, "I'll get him," and reached across his body and opened the door with his right hand and reached under the seat for the shotgun, grabbing it by the stock. His intention was to get out of the vehicle and shoot the squirrel. At approximately the same time that DuBay touched the stock, the shotgun went off injuring Rich.

No one saw DuBay place the loaded shotgun underneath the seat of the vehicle, and Rich did not know that DuBay's shotgun was in the vehicle. Rich made a claim against DuBay.

DuBay carried a homeowner's insurance policy issued by Glens Falls Insurance Company. That policy excluded coverage "To bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of: . . . (2) any motor vehicle owned or operated by, or rented or loaned to any Insured; . . ." DuBay did not have any automobile liability insurance policy.

The trial court concluded that there was a causal connection between the use of the vehicle and the accident and that therefore the homeowner's policy issued by Glens Falls to DuBay does not provide coverage for the accident. In reaching its decision, the trial court relied on the Arizona Supreme Court case of *Morari* v. *Atlantic Mutual Fire Insurance Company,* 105 Ariz. 537 [468 P.2d 564], a case factually similar to the instant case. *Morari* held that the homeowner's policy did not apply because the accident was caused by the procedure whereby the firearm was unloaded from the vehicle. The trial court in the instant case found that "the accident occurred during the unloading process of a motor vehicle within the meaning of the 'loading and unloading' clause of the plaintiff's policy."

We observe, initially, that since the underlying facts are not in dispute it is the duty of an appellate court to make its own independent determination of the meaning of the language in the instrument under consideration. (*Bareno* v. *Employers Life Ins. Co.,* 7 Cal.3d 875, 881 [103 Cal.Rptr. 865, 500 P.2d 889]; *Williams* v. *American Cas. Co.,* 6 Cal.3d 266, 271 [98 Cal.Rptr. 814, 491 P.2d 398].)

Subsequent to the trial court's judgment in the instant case the California Supreme Court rendered its decision in *State Farm Mut. Auto. Ins. Co.* v. *Partridge,* 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123]. In that case Wayne Partridge was the named insured in two policies—a homeowner's policy and an automobile liability policy. Neilson, a friend of Partridge, was injured while riding in an automobile driven by Partridge when a pistol which Partridge was holding discharged and a bullet therefrom entered Neilson's arm and penetrated down her spinal cord resulting in paralysis. At the time of the accident Partridge and Ray Albertson, who was also riding in the vehicle, were engaged in hunting

jackrabbits by shooting out of the windows of the moving vehicle. Prior to the accident Partridge had filed the trigger mechanism of the pistol to lighten the trigger pull so that the gun would have "hair-trigger action." (10 Cal.3d at pp. 97-98.)

The trial court found that Partridge's modification of the pistol was a negligent act, that he was negligent in driving the vehicle off the paved road onto rough terrain, that "these two negligent acts were independent, concurrent proximate causes" of Neilson's injuries, and that Neilson was therefore entitled to recover under both insurance policies. (10 Cal.3d at pp. 97, 99.)

In affirming the trial court's decision the Supreme Court emphasized that ". . . an entirely different rule of construction applies to exclusionary clauses as distinguished from coverage clauses. Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured [citations], exclusionary clauses are interpreted narrowly against the insurer. [Citations.] These differing canons of construction, both derived from the fundamental principle that all ambiguities in an insurance policy are construed against the insurer-draftsman, mean that in ambiguous situations an insurer might be found liable under both insurance policies. [Citations.]" (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94, 101-102.)

Glens Falls contends that the *Partridge* case is distinguishable from the instant case on the facts. We observe that the issue in *Partridge* was whether the homeowner's policy applied to the accident. This policy contained an exclusionary clause similar to the one in the instant case which denied coverage for injuries arising out of the use of a motor vehicle. The Supreme Court concluded that the "use" of Partridge's car was not the sole cause of the injury but was only one of two joint causes of the accident. Partridge's negligence in filing the trigger mechanism of his gun was viewed as a risk covered by the homeowner's policy. Although that accident occurred in the vehicle, the court concluded ". . . the insured's negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries." (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94, 103.)

The rationale of *Partridge* is applicable to the instant case. The undisputed facts establish that DuBay placed a loaded gun under the front seat of his vehicle and that the gun fired when he reached for the gun. Such an act, if found to be negligent and a proximate cause of

Rich's injury, would make DuBay liable to Rich for his injuries. Accordingly, DuBay's homeowner's policy would provide coverage for Rich's claim. The trial court's determination that there was a causal connection between DuBay's use of the vehicle does not affect the coverage under the homeowner's policy. We perceive that under the holding of *Partridge* Rich may recover if the accident arose from a cause not involving the use of the vehicle or from a cause concurrent with any cause arising from the use of the vehicle.

■ We apprehend that coverage would not be afforded if the accident arose solely out of the use of the vehicle. (*Herzog* v. *National American Ins. Co.,* 2 Cal.3d 192, 197 [84 Cal.Rptr. 705, 465 P.2d 841]; see *State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94, 106.) However, ". . . the fact that an accident has been found to 'arise out of the use' of a vehicle for purposes of an automobile policy is not necessarily determinative of the question of whether that same accident falls within a similarly worded exclusionary clause of a homeowner's policy." (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* at p. 102.)

■ Exclusionary clauses are interpreted narrowly against the insurer. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94, 102; *Prickett* v. *Royal Ins. Co., Ltd.,* 56 Cal.2d 234, 237 [14 Cal.Rptr. 675, 363 P.2d 907, 86 A.L.R.2d 711].) There are several California decisions construing the meaning of "use" which denied recovery under an automobile insurance policy where the vehicle was only a peripheral factor in nontraffic situations and the injury was directly caused by an independent act or intervening cause wholly disassociated from, independent of and remote from the use of the automobile, or where the insurance company of the negligent party sought to recover from the insurance company of the innocent party, and it was deemed inequitable to permit such recovery. (See *International Business Machines Corp.* v. *Truck Ins. Exch.,* 2 Cal.3d 1026, 1029-1031 [89 Cal.Rptr. 615, 474 P.2d 431]; *Travelers Ins. Co.* v. *Northwestern Mut. Ins. Co.,* 27 Cal.App.3d 959, 962-966 [104 Cal.Rptr. 283]; *State Farm Mut. Auto. Ins. Co.* v. *Cummings,* 21 Cal.App.3d 441, 444-445 [98 Cal.Rptr. 320]; *Camay Drilling Co.* v. *Travelers Indem. Co.,* 12 Cal.App.3d 237, 240-241 [90 Cal.Rptr. 710]; and see *United Services Automobile Assn.* v. *United States Fire Ins. Co.,* 36 Cal.App.3d 765, 773 [111 Cal.Rptr. 595].)

In its memorandum of decision the trial court observed that ". . . the accident occurred during the unloading process of a motor vehicle within the meaning of the 'loading and unloading' clause of the plaintiff's

policy." The issue, however, is not whether the accident occurred during the unloading process but whether the accident arose out of the use of the vehicle and whether that accident arose solely from that use. (*Entz* v. *Fidelity & Casualty Co.*, 64 Cal.2d 379, 385 [50 Cal.Rptr. 190, 412 P.2d 382].)

The trial court also stated in its decision that it agreed with the decision of the Arizona Supreme Court in *Morari*. That case is factually similar to the instant case and if we were disposed to follow it recovery would be denied to Rich under the subject policy. We are persuaded, however, that the rationale of *Morari* does not comport with that utilized by our own Supreme Court in *Partridge*. *Partridge* did not rationalize as did the court in *Morari* that Partridge could have driven his vehicle with such care that the gun would not have fired. Nor did it conclude that the carriage of the gun with hair-trigger action simply created a dangerous condition which imposed a duty to exercise reasonable care commensurate with all known circumstances to avoid its accidental discharge. Nor did it conclude that Partridge's driving over bumpy terrain was the negligent act or omission without which the injury could not have occurred.

We observe that the reasoning of the Arizona Court of Appeals in *Brenner* v. *Aetna Insurance Company*, 8 Ariz.App. 272 [445 P.2d 474] which was cited with approval in *Partridge*,[1] is in line with the reasoning of the California Supreme Court.[2] In *Brenner*, Luzadder, the insured under both a homeowner's policy and an automobile liability policy, was a passenger in a car of which he was the owner. While he was toying with a loaded gun, it fired injuring another passenger. The court denied recovery under the automobile policy but found that the accident was covered under the homeowner's policy which contained an automobile exclusion provision, stating, "This injury resulted from the use of a gun, not the use of a car." (8 Ariz.App. at p. 277 [445 P.2d at p. 479].)

Two cases in other jurisdictions also support the conclusion that the homeowner's policy provides coverage. In *Richland Knox Mutual Insurance Company* v. *Kallen*, 376 F.2d 360, 364-365, a passenger in the rear seat of an automobile lit a firecracker and unsuccessfully attempted

[1]The *Brenner* decision is cited in the *Partridge* decision at 10 Cal.3d 94, page 102.

[2]*Brenner* was disgtinguished by the Arizona Supreme Court on the grounds that in that case one of the passengers was "toying" with the gun and there was no connection between the toying with the gun and the use of the motor vehicle. (See *Morari* v. *Atlantic Mutual Fire Insurance Company, supra,* 105 Ariz. 537, at p. 540 [468 P.2d 564, at p. 567].)

to throw it out of a window with resulting injuries to another passenger. The court held that the accident was not one arising out of the use of an automobile within the exclusion of such accidents from the homeowner's liability coverage.

In *Azar* v. *Employers Casualty Company,* 178 Colo. 58 [495 P.2d 554], Azar wounded his hunting companion while the two were hunting rabbits along a public highway. Azar, the driver, prepared to fire through the car window, but noticing a car approaching brought the gun back into the car. It discharged injuring his companion. The reviewing court observed that ". . . it cannot reasonably be said that the discharge of the weapon in this case originated from, grew out of or flowed from the use of the vehicle. Rather, the injury originated from, grew out of or flowed from the use of the firearm. Use, as contemplated by the automobile liability policy, means *use of a vehicle as such,* not a use foreign to its inherent purpose, to which the vehicle might conceivably be put." (At p. 61 [495 P.2d at p. 555].)

Glens Falls, relying on *Herzog* (2 Cal.3d 192, 197), argues that DuBay is attempting to transform his homeowner's policy into one covering his negligent use of an autmobile. *Herzog* criticized such an attempt. However, *Herzog* is factually distinguishable from the present case. In that case the insured, while operating a motor bike, collided with an automobile on a highway. Under these facts it is clear that the accident resulted from the use of the motor bike.

We apprehend that it is just as improper to attempt to transform a homeowner's policy into an automobile liability policy merely because an automobile was peripherally involved. We note, too, that *Herzog* was distinguished in *Partridge* on the ground that in *Herzog* the accident arose solely out of the use of the vehicle. (10 Cal.3d 94, 106.) It was observed in *Partridge* that ". . . the *Herzog* case did not foreclose the possibility that in cases involving 'non-ordinary' automobile accidents, both a homeowner's policy and an automobile liability policy would provide coverage." (At p. 106.)

In the present case the accident did not arise so clearly from the use of the automobile as it did from DuBay's use of the shotgun. Conversely, DuBay's use of the shotgun caused the accident at least as much as the use of the automobile. The rationale of *Partridge* is accordingly applicable to the instant case. As observed in *Partridge,* the actuality "That multiple causes may have effectuated the loss does not

negate any single cause; that multiple acts concurred in the infliction of injury does not nullify any single contributory act." (10 Cal.3d 94, 105.)

The circumstance that the placing of the loaded gun in a hazardous position in the vehicle increased the danger of its firing and harming an occupant does not militate against the conclusion reached by us. In *Partridge* the court permitted recovery notwithstanding that the driving of the vehicle increased the already dangerous condition. In this case the use of the automobile is even more incidental to the accident. We perceive no ground for distinguishing this case from *Partridge* on the basis that DuBay was "unloading" a dangerous instrument whereas in *Partridge* the insured was carrying the dangerous instrument. In both cases the dangerous condition of the gun was the result of the insured's actions.

The judgment is reversed with directions that a judgment be entered declaring that the homeowner's policy issued by Glens Falls affords coverage to DuBay for any liability to Rich for the accident involved in this case.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied July 17, 1975, and respondent's petition for a hearing by the Supreme Court was denied September 4, 1975. McComb, J., and Clark, J., were of the opinion that the petition should be granted.