STATE CAPITAL INSURANCE COMPANY v. NATIONWIDE MUTUAL INSURANCE COMPANY AND HOWARD E. ANDERSON AND PAULA C. ANDERSON, AND MILTON LOUIS McKINNON

No. 89PA86

(Filed 18 November 1986)

1. **Insurance § 6.2— construction of policy provisions—provisions extending coverage—provisions excluding coverage**

   Provisions of insurance policies and compulsory insurance statutes which extend coverage must be construed liberally so as to provide coverage whenever possible by reasonable construction; on the other hand, provisions which exclude liability are not favored and all ambiguous provisions will be construed against the insurer and in favor of the insured. N.C.G.S. § 20-279.21(b)(2).

2. **Insurance § 68.4— automobile liability insurance—arising out of use of motor vehicle**

   An injury arose out of the use of an automobile so as to provide coverage under an automobile liability policy where the owner of a pickup truck had

stored a rifle behind the seat of the truck because the gun rack was full; the owner saw a deer and reached for the rifle from outside the truck; and the rifle discharged, striking the passenger of the truck as he was getting out of the truck. The shooting was an incident or consequence of the use of an automobile and was not the result of some independent act disassociated from the use of the automobile. N.C.G.S. § 20-279.21(b)(2).

### 3. Insurance § 143— homeowners insurance—shooting in pickup truck

A homeowners insurance policy provided coverage of injuries to a third party received when the policyholder reached behind the seat of his pickup truck for a rifle to shoot a deer, the rifle discharged, and the passenger was injured. An automobile use exclusion did not apply because any liability would be based on negligent mishandling of the rifle, and the automobile use exclusion does not apply if there is nonautomobile proximate cause.

### 4. Insurance § 6.2— shooting accident in pickup truck—automobile liability policy and homeowners policy—coverage by both

Both an automobile liability policy and a homeowners policy provided coverage for injuries suffered by a third party when the policyholder's rifle accidentally discharged as the policyholder removed it from the truck; each insurance policy is a separate contract which must be interpreted in accordance with its own terms under the applicable rules of construction.

Chief Justice BILLINGS dissenting in part.

Justice MITCHELL dissenting.

Justice MEYER joins in the dissenting opinion.

ON discretionary review of a unanimous decision of a panel of the Court of Appeals, 78 N.C. App. 542, 337 S.E. 2d 866 (1985), reversing the judgment entered by *Barnette, J.,* at the 19 December 1984 Civil Session of Superior Court, WAKE County. Heard in the Supreme Court 11 September 1986.

*Young, Moore, Henderson & Alvis, P.A., by R. Michael Strickland and A. Bradley Shingleton, for plaintiff-appellant State Capital Insurance Company.*

*Moore, Ragsdale, Liggett, Ray & Foley, P.A., by Peter M. Foley and Kurt E. Lindquist II, for defendant-appellant Nationwide Mutual Insurance Company.*

*Manning, Fulton & Skinner by John B. McMillan and Charles E. Nichols, Jr., for defendant-appellees Howard E. Anderson and Paula C. Anderson.*

FRYE, Justice.

The issue in this case is whether liability for personal injuries suffered by a third party when a rifle accidentally discharged while being removed by insured from a motor vehicle is covered by insured's automobile liability insurance policy or his homeowners liability insurance policy, or both. Under the facts presented in the instant case, we hold that coverage is provided by both policies.[1] We thus affirm the decision of the Court of Appeals.

On 13 November 1982, defendant Howard E. Anderson and defendant Milton Louis McKinnon traveled in Anderson's pickup truck to a tract of land in Warren County. The two had planned to survey and determine whether the property was fit for hunting by the M & K Hunting Club of which Anderson was a member. Anderson was driving while McKinnon was riding in the passenger seat. The truck was equipped with a gun rack in which were placed two guns, a shotgun and a rifle. In the storage space behind the seat Anderson had placed on a quilt a .30-30 rifle belonging to him. It was Anderson's custom to carry firearms in the storage space when the gun rack was full. Anderson brought the truck to a stop on the left side of a logging road near a ravine. Both he and McKinnon left the truck, presumably to talk with some other hunting companions whom they had followed in order to survey the property. At some point McKinnon returned to the truck. After several minutes, Anderson spotted a deer and returned to the truck in order to retrieve his rifle. Anderson opened the driver's door, moved the back of the seat forward and reached in the area where the rifle lay. At the same time McKinnon began to exit the truck. When Anderson's hand came in contact with the rifle it discharged, causing a bullet to strike McKinnon in the leg. At the time of this accident, defendants Howard E. Anderson and Paula C. Anderson were covered under both an automobile liability insurance policy issued by defendant Nationwide Mutual Insurance Company ("Nationwide") and a policy of homeowners liability insurance issued by plaintiff State Capital Insurance Company ("State Capital").

---

1. This holding is of course subject to the general rule that claimants are not entitled to a double recovery.

Nationwide's automobile liability insurance policy provided in pertinent part as follows:

Part B

LIABILITY COVERAGE

INSURING AGREEMENT

We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident.

. . . .

FINANCIAL RESPONSIBILITY REQUIRED

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

State Capital's homeowners liability insurance policy contained the following provision:

SECTION II — EXCLUSIONS

1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to bodily injury or property damage:

. . . .

e. arising out of the ownership, maintenance, use, loading or unloading of:

. . . .

(2) a motor vehicle owned or operated by, or rented or loaned to any insured . . . .

Plaintiff State Capital brought a declaratory judgment action seeking a determination of its rights and liabilities and those of defendant Nationwide with respect to the injuries suffered by defendant McKinnon. All parties waived jury trial; the trial judge instead made findings of fact, the essence of which are recounted above, and concluded that neither policy provided coverage for damages in this case. Defendants Anderson appealed. A unanimous panel of the Court of Appeals reversed the judgment of the

trial court and held that both Nationwide's automobile liability policy and State Capital's homeowners liability policy provided coverage. We affirm this decision for the reasons stated below.

[1]    The crucial issue in this case turns on a determination of the meaning given to the "arising out of" language in the compulsory motor vehicle liability statute, N.C.G.S. § 20-279.21(b)(2), and the State Capital homeowners policy exclusion. It is particularly important in the instant case to recognize that different rules of construction govern the interpretation of policy provisions which *extend* coverage as opposed to policy provisions which *exclude* coverage. In construing the coverage provision of the Nationwide automobile policy, we follow the rule that provisions of insurance policies and compulsory insurance statutes which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction. *See Moore v. Hartford Fire Insurance Co.*, 270 N.C. 532, 155 S.E. 2d 128 (1967); *Jamestown Mutual Insurance Co. v. Nationwide Mutual Insurance Co.*, 266 N.C. 430, 146 S.E. 2d 410 (1966). On the other hand, when construing the exclusion provision of the State Capital homeowners policy we are guided by the rule that provisions which exclude liability of insurance companies are not favored and therefore all ambiguous provisions will be construed against the insurer and in favor of the insured. *Wachovia Bank & Trust Co. v. Westchester Fire Insurance Co.*, 276 N.C. 348, 172 S.E. 2d 518 (1970).

## I.

[2]    We first consider whether the Nationwide automobile liability policy provides coverage for injuries resulting from the accidental shooting of McKinnon. The policy language states that Nationwide will insure Anderson against liability for which he "becomes legally responsible because of an auto accident." The compulsory motor vehicle liability statute provides that any motor vehicle policy certified as proof of financial responsibility[2] shall insure the named insured against loss from the liability imposed by law "for damages arising out of the ownership, maintenance or use of such motor vehicle . . . ." N.C.G.S. § 20-279.21(b)(2) (1985). It is well established in North Carolina

---

2. Nationwide does not contend, nor do we find any evidence in the record that the motor vehicle policy has not been certified as proof of financial responsibility. Therefore, we assume that this requirement has been met.

that as a matter of law the provisions of the Financial Responsibility Act are written into every automobile liability policy. *Nationwide Mutual Insurance Co. v. Chantos*, 293 N.C. 431, 238 S.E. 2d 597 (1977). Thus, the Nationwide automobile liability policy, when properly construed, provides coverage for damages "arising out of the ownership, maintenance or use" of the automobile. In this case liability under the Nationwide policy depends on whether the damages resulting from the injuries to McKinnon arose out of the use of the automobile. In determining the meaning of the words "arising out of the use of an automobile" we are mindful that "[a] compulsory motor vehicle insurance act is a remedial statute and will be liberally construed so that the beneficial purpose intended by its enactment by the General Assembly may be accomplished." *Moore v. Hartford Fire Insurance Co. Group*, 270 N.C. 532, 535, 155 S.E. 2d 128, 130-31.

> The words 'arising out of' are not words of narrow and specific limitation but are broad, general, and comprehensive terms affecting broad coverage. They are intended to, and do, afford protection to the insured against liability imposed upon him for all damages caused by acts done in connection with or arising out of such use. They are words of much broader significance than 'caused by.' They are ordinarily understood to mean . . . 'incident to,' or 'having connection with' the use of the automobile . . . . (Citations omitted.)

> The parties do not, however, contemplate a general liability insurance contract. There must be a causal connection between the use and the injury. This causal connection may be shown to be an injury which is the natural and reasonable incident or consequence of the use, though not foreseen or expected, but the injury cannot be said to arise out of the use of an automobile if it was directly caused by some independent act or intervening cause wholly disassociated from, independent of, and remote from the use of the automobile. (Citation omitted.)

*Fidelity & Casualty Co. of N.Y. v. N.C. Farm Bureau Mutual Insurance Co.*, 16 N.C. App. 194, 198-99, 192 S.E. 2d 113, 118, *cert. denied*, 282 N.C. 425, 192 S.E. 2d 840 (1972).

In short, the test for determining whether an automobile liability policy provides coverage for an accident is not whether

the automobile was a proximate cause of the accident. Instead, the test is whether there is a causal connection between the use of the automobile and the accident.

We find that such causal connection exists between the use of the automobile in this case, a pickup truck, and injuries to McKinnon. The transportation of firearms is an ordinary and customary use of a motor vehicle, especially pickup trucks. In addition, use of an automobile includes its loading and unloading. *Fidelity and Casualty Co. of N.Y. v. N.C. Farm Bureau Mutual Insurance Co.*, 16 N.C. App. 194, 192 S.E. 2d 113, *cert. denied*, 282 N.C. 425, 192 S.E. 2d 840; *see also Fireman's Fund Insurance Co. v. Canal Insurance Co.*, 411 F. 2d 265 (5th Cir. 1969). In the case *sub judice*, Anderson transported his .30-30 rifle in his pickup truck; as he attempted to unload the rifle from the truck, it discharged, causing injury to McKinnon. Since the transportation and unloading of firearms are ordinary and customary uses of a motor vehicle, and the injury-causing accident here resulted from the unloading of the transported rifle, such injuries were a natural and reasonable incident or consequence of the use of the motor vehicle.

We distinguish this case from the cases found in the Court of Appeals' decisions in *Raines v. St. Paul Fire & Marine Insurance Co.*, 9 N.C. App. 27, 175 S.E. 2d 299 (1970) (son of named insured sitting in driver's seat of parked automobile playing with gun which discharged, killing another occupant); *Nationwide Mutual Insurance Co. v. Knight*, 34 N.C. App. 96, 237 S.E. 2d 341, *disc. rev. denied*, 293 N.C. 589, 239 S.E. 2d 363 (1977) (defendant insured, the occupant of an automobile, intentionally shot into another automobile causing injury to an occupant of the second car); and *Wall v. Nationwide Mutual Insurance Co.*, 62 N.C. App. 127, 362 S.E. 2d 302 (1983) (intentional shooting of plaintiff by occupant of automobile); on the ground that each of these cases deals with injuries caused by activities not ordinarily associated with the use of an automobile. The shooting in the case *sub judice* was an incident or consequence of the use of an automobile and not the result of some independent act disassociated from the use of an automobile. Since the requisite causal connection exists between the injury suffered by McKinnon and the use of Anderson's pickup truck, we hold that with respect to the Nationwide auto-

mobile liability policy the injury arose out of the use of an automobile so as to provide coverage under that policy.

## II.

[3]  Next, we consider whether the exclusion in State Capital's homeowners policy excludes coverage for the injuries resulting from the accidental shooting of McKinnon. The State Capital policy insured Anderson against liability for damages for which he was liable because of bodily injury or property damage, but excluded coverage for such damages "arising out of the ownership, maintenance, use, loading, and unloading" of a motor vehicle. We first note that the determination that the injury "arose out of the use of an automobile" so as to provide coverage under the automobile liability policy does not necessarily mean that the homeowners policy does not provide coverage merely because it excludes from its policy accidents "arising out of the use" of a motor vehicle. We agree with the Court of Appeals that such a conclusion would ignore the established rule of construction that "[t]he two policies are not construed in light of each other; each policy is a separate contract of insurance between the company issuing it and the insured, and requires a separate and independent analysis in light of that relationship. *Allstate Insurance Co. v. Shelby Mutual Insurance Co.*, 269 N.C. 341, 152 S.E. 2d 436 (1967)." *State Capital Insurance Co. v. Nationwide Mutual Insurance Co.*, 78 N.C. App. 542, 549, 337 S.E. 2d 866, 870.

Keeping in mind the rules of construction, that all ambiguities in exclusion provisions are construed against the insurer and in favor of coverage, we find that under the facts in this case State Capital's homeowners policy provides coverage to Anderson for damages resulting from the injuries to McKinnon notwithstanding the exclusionary language. Although there are no North Carolina cases on point,[3] a growing number of courts in other jurisdictions have held that similar provisions in homeowners and

---

3. *Reliance Insurance Co. v. Walker*, 33 N.C. App. 15, 234 S.E. 2d 206, *disc. rev. denied*, 293 N.C. 159, 236 S.E. 2d 704 (1977) (rifle which had been transported in a gun rack of insured's truck accidentally discharged as insured got into truck, thus injuring a bystander) involved an automobile liability policy and a homeowners automobile-use exclusion which were practically identical to those in the instant case. The Court of Appeals held that the automobile policy provided coverage. However, as the court noted, it did not determine rights with respect to the homeowners policy, as this issue was not before the court.

automobile policies provide concurrent coverage for the same accidents. *See State Farm v. Partridge*, 10 Cal. 3d 94, 514 P. 2d 123 (1973); *Travelers Insurance Company v. Aetna Casualty and Surety Company*, 491 S.W. 2d 363 (Tenn. 1963); *see also Glens Falls Insurance Company v. Rich*, 49 Cal. App. 3d 300, 122 Cal. Rptr. 696 (1975); *Waseca Mutual Insurance Company v. Noska*, 331 N.W. 2d 917 (Minn. 1983); *Lawver v. Boling*, 71 Wis. 2d 408, 238 N.W. 2d 514 (1976); 7A J. Appleman, *Insurance Law and Practice* § 4500 (Berdal ed. 1979).

The seminal case finding concurrent coverage by a homeowners insurance policy and an automobile insurance policy for a shooting incident is *State Farm v. Partridge*, 10 Cal. 3d 94, 514 P. 2d 123. In that case, the insured (Partridge) and two friends were hunting jack rabbits by shooting out of the windows of Partridge's four-wheel drive Ford Bronco as he drove through the countryside. Partridge was shooting a .357 magnum pistol which he had modified by filing the triggering mechanism to give it a "hair trigger." Partridge spotted a jack rabbit running across the road and left the road to keep the rabbit in the car's headlights. During the chase the car hit a bump, the pistol discharged, and the bullet hit the middle passenger in the spine, paralyzing her. Partridge was insured under an automobile policy and a homeowners policy, both issued by State Farm, which contained language similar to the Anderson policies. The automobile policy afforded coverage for bodily injuries "caused by accident arising out of the ownership, maintenance or use including loading or unloading of the owned motor vehicle . . . ." The homeowners policy on the other hand excluded coverage for "bodily injury . . . arising out of the [o]wnership, [m]aintenance, [o]peration, [u]se, [l]oading or [u]nloading of . . . any [m]otor [v]ehicle." State Farm argued that the exclusionary language in the homeowners policy was the same as the coverage language in the automobile policy so that they were mutually exclusive and could not provide overlapping coverage. The Supreme Court of California rejected this argument.

First, the court stated that even when language in two insurance policies is similar, the rules of construction applied to an *exclusionary clause* are substantially different from the rules of construction applied to a *coverage clause*. Exclusionary clauses are interpreted narrowly while coverage clauses are interpreted

broadly to provide the greatest possible protection to the insured. Since the terms of the policy must be construed against the insurance company, the same language in two different policies can have different meanings. The court held

> In view of the above approach the fact that an accident has been found to 'arise out of the use' of a vehicle for purposes of an automobile policy is not necessarily determinative of the question of whether that same accident falls within a similarly worded exclusionary clause of a homeowner's policy. [Citations omitted.] As one commentator has recently observed: It is clear that the expression 'use of an automobile' has different meanings under different circumstances and that, whenever possible, the Courts will apply an interpretation which gives, but never takes away, coverage for the 'use' of an automobile, thereby causing automobile and non-automobile liability policies to overlap, notwithstanding the exclusion against the 'use' of an automobile in most non-automobile liability policies. [Citations omitted.]

*State Farm v. Partridge*, 10 Cal. 3d 94, 100-01, 514 P. 2d 123, 127-28.

The *Partridge* court, however, declined to predicate its decision on the ambiguity of the exclusionary clause. Instead it based its decision on a second rationale that the injury in that case had two joint causes: one arising from the negligent operation of the automobile and the other arising from the negligent tampering with the firing mechanism of the pistol. The court held that the homeowners policy covered the risk related to the pistol, while the automobile policy covered the risk related to the automobile.

> Although there may be some question whether either of the two causes in the instant case can be properly characterized as *the* 'prime,' 'moving,' or 'efficient' cause of the accident we believe that coverage under a liability insurance policy is equally available to an insured whenever an insured risk constitutes simply *a* concurrent proximate cause of the injuries. [Citations omitted.] That multiple causes may have effectuated the loss does not negate any single cause; that multiple acts concurred in the infliction of injury does not nullify any single contributory act.

*State Farm v. Partridge*, 10 Cal. 3d 94, 97, 514 P. 2d 123, 130-31.

Other courts have adopted one or both of these rationales in finding overlapping coverage in homeowners and automobile policies for certain accidents. *Travelers Insurance Company v. Aetna Casualty and Surety Company*, 491 S.W. 2d 363 (Tenn.), involved a person injured on a hunting trip when a shotgun accidentally discharged while being placed inside an automobile by the insured. The insured had automobile insurance with Aetna and homeowners insurance with Travelers. The Aetna policy insured for "bodily injury . . . arising out of the ownership, maintenance or use including, loading and unloading of an automobile." A clause in Travelers policy, however, stated that the homeowners policy "does not apply . . . [to personal liability resulting from] the ownership, maintenance, operation, use, loading or unloading of . . . automobile." The court held that ambiguities in the policy language required overlapping coverage.

> There can be little doubt that the terms 'use' and 'loading and unloading' are ambiguous, particularly in light of the courts' major efforts to define and interpret those terms. Those terms have taken on varied meanings and have been subjected to varied applications and tests in construing coverage under automobile liability policies. That being true, under facts such as those in the instant case, homeowner policies of insurance should stand on their own language and exclusions should be strongly construed against the insurer. After properly construing the ambiguous terms strictly against automobile liability carriers to provide coverage, some courts have conversely, by allowing homeowner carriers the benefit of the same construction, construed homeowner policies, bought for insurance coverage against nonvehicular liability, strictly against the insured. In keeping with the policy of the law, the inverse should be true. By holding Travelers liable in the instant case, we are neither redefining the terms nor changing the standard of causation. We are, rather, merely strictly construing those ambiguous terms and the standard of causation against the homeowner carrier standing by itself . . . . [T]he sole object of the insured in obtaining insurance is indemnity. To exclude coverage, exclusion clauses must be drafted in clear and unambiguous terms. The terms being ambiguous, they must be strictly construed against the insurer.

. . . .

We are unable to agree that a mere connection with the loading of a vehicle, which is sufficient to allow recovery against an automobile carrier, also allows a homeowner carrier to exclude coverage. Neither does logic demand, nor will the law allow such a result.

. . . .

We hold that for a homeowner's policy of insurance to exclude coverage because of use, loading or unloading of an automobile, that use, loading or unloading must be the *efficient* and *predominating* cause in the strict sense of those terms. It is clear from the facts in the instant case that while the injury was connected with the use of the vehicle during the act of loading, neither that use nor act of loading was the *efficient* and *predominating cause,* the requisite causal relationship necessary to bring it within the exclusionary provisions of the policy.

*Travelers Insurance Co. v. Aetna Casualty and Surety Co.,* 491 S.W. 2d 363, 367-68 (Tenn.) (emphasis added).

In *Glens Falls Insurance Co. v. Rich,* 49 Cal. App. 3d 300, 122 Cal. Rptr. 696, the insured, Harry DuBay, while on a hunting trip, placed a loaded shotgun under the seat of his car. Upon spotting a squirrel, the insured stopped the car and reached underneath the seat for the shotgun. When he touched the stock, the shotgun went off, injuring a passenger in the car. DuBay carried a homeowners insurance policy issued by Glens Falls Insurance Company. That policy excluded coverage "To bodily injury or property damages arising out of the ownership, maintenance, operation, use, loading or unloading of: . . . (2) any motor vehicle owned or operated by, or rented or loaned to any Insured . . . ." DuBay did not have any automobile liability insurance policy. The court found that the homeowners policy provided coverage for the injury. According to the court,

[T]he undisputed facts established that DuBay placed a loaded gun under the front seat of his vehicle and that the gun fired when he reached for the gun. Such an act, if found to be negligent and a proximate cause of Rich's injury, would make DuBay liable to [the passenger] for his injuries. Accordingly,

DuBay's homeowners policy would provide coverage for the passenger's claim. The trial court's determination that there was a causal connection between DuBay's use of the vehicle does not affect the coverage under the homeowners policy.

*Rich*, 49 Cal. App. 3d at 305, 122 Cal. Rptr. at 699. The court reasoned that the passenger could recover from the insurer if the accident arose solely from a non-automobile related cause or from a non-automobile related cause concurrent with any cause arising from the use of an automobile. Coverage would not be afforded however if the accident arose solely out of the use of an automobile. *Id.*

Finally, in *Waseca Mutual Insurance Co. v. Noska*, 331 N.W. 2d 917 (Minn.), the court held that both a homeowners and an automobile policy provided coverage for fires caused by sparks which escaped from uncovered barrels being transported to a landfill because injury resulted from the concurrence of a vehicle-related and a non-vehicle-related act. *See also Lawver v. Boling*, 71 Wis. 2d 408, 238 N.W. 2d 514 (summary judgment denied as to issue of coverage under a farm owner's policy and an automobile policy for an accident since the evidence would support a finding that injuries resulted from negligence in the operation of a truck, or from negligence in the choice of materials and manner of construction, or both); 7A J. Appleman *Insurance Law and Practice* § 4500 (Berdal ed. 1979).

In summary, the cases discussed above establish two principles with respect to determining the coverage of homeowners policies: (1) ambiguous terms and standards of causation in exclusion provisions of homeowners policies must be strictly construed against the insurer, and (2) homeowners policies provide coverage for injuries so long as a non-excluded cause is either the sole or concurrent cause of the injury giving rise to liability. Stating the second principle in reverse, the sources of liability which are excluded from homeowners policy coverage must be the sole cause of the injury in order to exclude coverage under the policy.

These principles find support in existing North Carolina law. First, it is well settled in North Carolina that insurance policies are construed strictly against insurance companies and in favor of the insured. *Maddox v. Colonial Life and Accident Insurance Co.*, 303 N.C. 648, 280 S.E. 2d 907 (1981); *Grant v. Emmco Insurance*

*Co.*, 295 N.C. 39, 243 S.E. 2d 894 (1978); *Insurance Co. v. Insurance Co.*, 269 N.C. 358, 152 S.E. 2d 513 (1967). Provisions which exclude liability of insurance companies are not favored. Therefore all ambiguous provisions are strictly construed against the insurer and in favor of the insured. *Wachovia Bank & Trust Co. v. Westchester Fire Insurance Co.*, 276 N.C. 348, 172 S.E. 2d 518. We agree with the Court of Appeals' decision that when strictly construed the standard of causation applicable to the ambiguous "arising out of" language in a homeowners policy exclusion is one of proximate cause. *See State Capital Insurance Co. v. Nationwide Mutual Insurance Co.*, 78 N.C. App. 542, 337 S.E. 2d 866.

Secondly, this Court has held that when an accident has more than one cause, one of which is covered by an "all risks" insurance policy and the other which is not, the insurer must provide coverage. In *Avis v. Hartford Fire Insurance Co.*, 283 N.C. 142, 150, 195 S.E. 2d 545, 549 (1973), this Court stated: "As a general rule, coverage will extend when damage results from more than one cause even though one of the causes is specifically excluded." [Citations omitted.]

Applying these two principles to the cause *sub judice*, we hold that the exclusionary language in the State Capital homeowners policy should be interpreted as excluding accidents for which the sole proximate cause involves the use of an automobile. If there is any non-automobile proximate cause, then the automobile use exclusion does not apply.

In the present case, Anderson's liability, if any, could be based on a finding that negligent mishandling of the rifle was a proximate cause of McKinnon's injury. Therefore, the homeowners policy would provide coverage under its basic terms, and the automobile use exclusion would not apply.

### III.

[4] For the reasons stated herein, we hold that both Nationwide and State Capital provide coverage under their respective policies. We note in addition that the reasoning in support of overlapping coverage is persuasive. Each insurance policy is a separate contract which must be interpreted in accordance with its own terms under the applicable rules of construction — not *in pari materia* with other policies which the insured may or may

not own. *See Allstate Insurance Co. v. Shelby Mutual Insurance Co.*, 269 N.C. 341, 152 S.E. 2d 436. Furthermore, when the properly construed terms of more than one policy provide coverage for a single accident, this result is not burdensome to the insurance companies nor against public policy—the companies have been paid premiums to cover certain risks, and when the event insured against occurs, those companies should be required to provide coverage.

We, therefore, affirm the decision of the Court of Appeals.

Affirmed.

Justice MITCHELL dissenting.

Mindful as I am of the rules of construction which require in sum that insurance policies be construed against the companies issuing them, I nevertheless feel compelled by law and the clear terms of the insurance policies involved in this case to conclude that neither policy provided coverage under these facts. Accordingly, I must respectfully dissent.

The motor vehicle liability insurance policy issued by Nationwide Mutual Insurance Company in the present case included as a matter of law language insuring the named insured against loss from liability "for damages arising out of the ownership, maintenance or use of such motor vehicle. . . ." N.C.G.S. § 20-279.21(b)(2) (1985). The majority states that the test for determining whether the motor vehicle liability policy provides coverage "is whether there is a causal connection between the use of the automobile and the accident." The majority then "finds" such a causal connection to exist in the present case. I do not agree.

It is clear in the present case that Anderson returned to his parked pickup truck to get his rifle after seeing a deer. As he unloaded the rifle from the truck, it discharged wounding McKinnon who was standing on the opposite side of the truck. The majority's finding that McKinnon's injury was causally connected to the use of the truck in this case, would seem to require a similar "finding" had the truck been on blocks and inoperable in Anderson's yard at the time the accident occurred. I fail to see any principled way of distinguishing the "use" of the vehicle in the hypothetical situation from the "use" actually involved here. I

would not allow recovery in either situation under the terms made a part of the liability policy by the statute.

The simple fact of the matter is that in this case the accident arose out of the ownership and use of the rifle and was in no way causally connected to the use of the truck. I do not believe that the cases relied upon by the majority support its determination that a causal connection existed between the use of the truck in the present case and the injuries to McKinnon. Most of those cases involved situations in which the vehicle was in motion or being placed in motion by the driver at the time of the accident. *E.g. Insurance Co. v. Walker,* 33 N.C. App. 15, 234 S.E. 2d 206, *disc. rev. denied,* 293 N.C. 159, 236 S.E. 2d 704 (1977) (rifle discharged as driver prepared to drive away and reached to insert key in ignition); *Casualty Co. v. Insurance Co.,* 16 N.C. App. 194, 192 S.E. 2d 113, *cert. denied,* 282 N.C. 425, 192 S.E. 2d 840 (1972) (key in ignition switch negligently turned causing truck to move forward); *State Farm v. Partridge,* 10 Cal. 3d 94, 514 P. 2d 123 (1973) (insured shooting a "hair trigger" pistol at jack rabbits while driving his vehicle after them). In each of those cases the actual driving or operation of the motor vehicle properly could have been found to be at least concurring negligence and one proximate cause of the resulting injury. The result should be different, however, when as in the present case the accident and resulting injury arose solely from the removal of a gun from a motor vehicle which was parked and not itself being driven or otherwise "used" at the time of the accident. *Raines v. Insurance Co.,* 9 N.C. App. 27, 175 S.E. 2d 299 (1970) (no coverage for accidental discharge of gun killing other occupant in parked automobile).

The majority next holds that the injury resulting from the accidental shooting of McKinnon was covered by the homeowner's policy issued by State Capital Insurance Company. That policy specifically excluded coverage, *inter alia,* for damages arising out of the "unloading" of a motor vehicle. In removing the rifle from the truck, Anderson clearly was "unloading" a motor vehicle. *See* Black's Law Dictionary 1378 (rev. 5th ed. 1979). The accident and resulting injury in this case arose from the unloading. In my view, the term "unloading" as used in the exclusionary section of the homeowner's policy clearly and unambiguously excludes coverage for the accident in the present case. *Contra Travelers In-*

*surance Co. v. Aetna Casualty & Sur. Co.*, 491 S.W. 2d 363 (Tenn. 1973).

Although my heart might go to the insured in a case such as this, I simply can find no way in good conscience that my mind can follow. I dissent.

Justice MEYER joins in this dissenting opinion.

Chief Justice BILLINGS dissenting in part.

If the motor vehicle liability policy provides coverage in this case because the accident arose out of the use of the insured's motor vehicle, then I fail to understand how a homeowner's policy that specifically excludes from coverage bodily injury arising out of the use of a motor vehicle owned by the insured can be construed to provide coverage. To me, this is not a matter of "liberal" versus "strict" construction of insurance policies; we are merely asked to apply common sense to words chosen to prevent exactly what the majority determines is the result in the case *sub judice*. The exclusion in the homeowner's policy unmistakably notifies the insured that coverage is not provided if the liability arises out of the use of a motor vehicle owned by an insured. While there may be some ambiguity about whether under the circumstances the insured's liability arose out of the use of the insured's vehicle, once it is established either that the liability did or did not arise out of that use, the terms and therefore the reach of neither policy are ambiguous.

I agree with Justice Mitchell's analysis of the coverage provided by the Nationwide Mutual Insurance Company's motor vehicle liability policy and therefore would hold that coverage is not provided by that policy. I disagree with Justice Mitchell in his conclusion that the State Capital Insurance Company's homeowner's policy does not provide coverage. As indicated above, since the accident did not arise out of the use of the motor vehicle, the exclusion contained in the other policy excluding coverage for liability arising out of the use of the motor vehicle does not apply. The only remaining question is whether the exclusion for liability arising out of the "loading or unloading" of a motor vehicle owned by an insured excludes the liability in the case *sub judice*.

Nationwide Mutual Ins. Co. v. Land

The correct resolution of the question of coverage under the homeowner's policy is the construction of the word "unloading." If "unloading" is construed to mean the removal of any item from the vehicle, then the exclusion applies and coverage is not provided. If, however, the word is construed to mean the removal from the vehicle of cargo,[1] defined as "the lading or freight of a ship, airplane, or vehicle,"[2] the transportation of which is the primary purpose for which the vehicle was being used,[3] then the exclusion does not apply to the removal of the rifle from the vehicle in the case *sub judice*. Giving to the words "loading and unloading" the more restrictive construction, I would hold that the accident did not arise out of the insured's "unloading" of the vehicle and that the exclusion in the homeowner's policy does not apply. I would hold that the State Capital Insurance Company's policy alone provides coverage.

---

1. See the definition of "unload" in Webster's Third New International Dictionary 2503 (1961).

2. *Id.* at 339.

3. See the cases cited in the majority opinion. Note especially *Casualty Co. v. Insurance Co.*, 16 N.C. App. 194, 192 S.E. 2d 113, *cert. denied*, 282 N.C. 425, 192 S.E. 2d 840 (1972) (truck's three 500 gallon tanks were being loaded with pressurized anhydrous ammonia).