NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, PLAINTIFF V. GERALD WAYNE BRILEY, JOAN S. BRILEY, JOE QUINERLY, LINDA QUINERLY, WALLACE E. BEDDARD, SR., AND DONNA H. BEDDARD, DEFENDANTS

No. COA95-1427

(Filed 7 October 1997)

**1. Insurance § 725 (NCI4th)— homeowner's liability insurance—meaning of "business"**

　　The term "business" as used in the liability portion of a homeowner's policy refers to an individual's paramount means of earning a livelihood.

**2. Insurance § 725 (NCI4th)— homeowner's liability insurance—injury to another during part-time work—business use exclusion inapplicable**

　　The business use exclusion in the liability portion of a homeowner's policy did not apply to exclude coverage for injuries received by a person assisting the insured in his part-time tree trimming work when he was struck by a tree limb cut by the insured where the insured's primary employment was as a spinning operator at DuPont.

Appeal by plaintiff from judgment entered 2 October 1995 by Judge Henry W. Hight, Jr. in Wake County Superior Court. Heard in the Court of Appeals 24 September 1996.

*Baker, Jenkins, Jones & Daly, P.A., by Ronald G. Baker and Kevin N. Lewis, for plaintiff-appellant.*

*Ward and Smith, P.A., by Ryal W. Tayloe, A. Charles Ellis, and Frank A. Cassiano, Jr., for defendants-appellees Wallace E. Beddard, Sr. and Donna H. Beddard.*

*Gaylord, McNally, Strickland & Snyder, L.L.P., by Danny D. McNally, for defendants-appellees Gerald Wayne Briley and Joan S. Briley.*

*James M. Stanley, Jr. for defendants-appellees Joe and Linda Quinerly (no brief filed).*

JOHN, Judge.

Plaintiff appeals the trial court's grant of summary judgment to defendants and denial of its like motion. We affirm.

Relevant background information is essentially undisputed and is as follows: On 11 October 1991, defendant Wallace E. Beddard Sr. (Beddard) was assisting defendant Gerald Wayne Briley (Briley) with tree trimming at the home of defendants Joe and Linda Quinerly (the Quinerlys) when Beddard was struck by a tree limb which Briley had cut. Beddard and his wife Donna H. Beddard (the Beddards) subsequently instituted a tort action against Briley, his wife Joan S. Briley and the Quinerlys for injuries Beddard suffered as a result of the accident.

At the time Beddard was injured, there was in effect a homeowners' insurance policy (the policy) issued by plaintiff to Briley and his wife. The couple sought coverage, but plaintiff denied liability based upon the business use exclusion contained in the policy. While appearing on behalf of Briley and wife in the underlying tort action under a reservation of rights, plaintiff sought declaratory judgment as to its obligation under the policy in the instant action filed 9 January 1995.

Following depositions of Briley, Beddard and Joe Quinerly, the Beddards and plaintiff moved for summary judgment. At a subsequent hearing, the court denied plaintiff's summary judgment motion and allowed that of the Beddards in an order entered 2 October 1995.

The court's order further stated "that Defendant Gerald Wayne Briley and Joan S. Briley are afforded liability insurance coverage under Plaintiff's policy." Plaintiff appeals.

Summary judgment may be granted in a declaratory judgment action, *Threatte v. Threatte*, 59 N.C. App. 292, 294, 296 S.E.2d 521, 523 (1982), *appeal dismissed*, 308 N.C. 384, 302 S.E.2d 226 (1983), and the scope of appellate review from allowance of a summary judgment motion therein is the same as for other actions, N.C.G.S. § 1-258 (1996); *Dickey v. Herbin*, 250 N.C. 321, 325, 108 S.E.2d 632, 635 (1959). Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56 (1990); *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 665, 449 S.E.2d 240, 242 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995).

Plaintiff in its brief advances the single contention that the trial court's ruling was based upon its erroneous determination that Briley's activities were not excluded from coverage by the following pertinent policy language:

**Coverage E—Personal Liability and Coverage F—Medical Payments to Others** do not apply to **bodily injury** or **property damage**:

. . . .

b.(1) arising out of or in connection with a **business** engaged in by an **insured**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business**.

Plaintiff argues Briley's tree trimming constituted a business within the meaning of the foregoing provision. We note at the outset that the specific "business use" exclusion language in the policy has not been considered extensively by our courts. In *Nationwide Mutual Fire Ins. Co. v. Johnson*, 121 N.C. App. 477, 482, 466 S.E.2d 313, 316 (1996), this Court held the provision to be inapplicable. In that case, employees of the insured, owner of a painting company, gathered at his home. *Id.* at 478, 466 S.E.2d at 314. However, the insured had no work to be done that day. *Id.* While at the insured's home, one of the employees began operating a boom and cherry-

picker used in the company's painting operation. *Id.* The employee was killed when the boom came in contact with a live wire. *Id.* Because the record in no way indicated that decedent and the insured were involved in business activity at the time of the accident, we determined the business use exclusion in the policy at issue did not apply, and did not reach the question of whether the painting company constituted a "business" within the meaning of the exclusion. *Id.* at 482, 466 S.E.2d at 316.

In *Nationwide Mutual Fire Ins. Co. v. Nunn,* 114 N.C. App. 604, 606, 442 S.E.2d 340, 342 (1994), *disc. review denied,* 336 N.C. 782, 447 S.E.2d 426 (1994), this Court was called upon to interpret the effectiveness of a business use exclusion identical to that *sub judice.* In *Nunn,* we determined that the public bed and breakfast and reception site establishment operated by the insureds was a business under the terms of the policy in question. *Id.* However, the case turned on whether the injuries suffered when a guest was bitten by a dog were "in connection with" or "arose out of" that business. *Id.* at 607, 442 S.E.2d at 342. The issue presented herein, therefore, specifically whether part-time labor for which compensation has been received falls within the business use exclusion, is one of first impression.

The meaning of specific language used in an insurance policy is a question of law. *Trust Co. v. Insurance Co.,* 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). When the language is clear and unambiguous, a policy provision will be accorded its plain meaning. *Walsh v. Insurance Co.,* 265 N.C. 634, 639, 144 S.E.2d 817, 820 (1965). However, when language is subject to more than one interpretation, a policy provision is to be liberally construed so as to afford coverage whenever possible by reasonable construction. *State Capital Ins. Co. v. Nationwide Mutual Ins. Co.,* 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986).

Further,

[i]t is the general rule that where a provision in a policy of insurance is susceptible of two interpretations, *when considered in the light of the facts of the case,* one imposing liability, the other excluding it, the provision will be construed against the insurer.

*Roach v. Insurance Co.,* 248 N.C. 699, 701, 104 S.E.2d 823, 824-25 (1958) (emphasis added) (citations omitted).

Finally, it is well settled in this jurisdiction that the rules of construction governing interpretation of insurance provisions extending coverage differ from those governing provisions which exclude coverage. *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986). While the latter are to be construed broadly, exclusionary provisions are not favored and will be construed against the insurer if ambiguous. *Id.*

[1] Bearing the foregoing principles in mind, we examine the instant policy. Definitions contained within a policy are applied when construing its terms. *Woods v. Insurance Co.*, 295 N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978). The policy defines business to "include[] trade, profession or occupation." Webster's Third New International Dictionary (1968) indicates trade is "the business one practices or the work in which one engages regularly." *Id.* at 2421. Profession is "a principal calling, vocation, or employment." *Id.* at 1811. Occupation is "the principal business of one's life: a craft, trade or other means of earning a living." *Id.* at 1560. All three definitions, each containing similar phraseology ("*the* business," "*principal* calling," and "*the principal* business") thus signify that "business" as defined in the policy refers to an individual's paramount means of earning a livelihood.

[2] Nonetheless, plaintiff in essence relies upon the definition of "trade" as "work in which one engages regularly" to argue Briley's tree trimming activity was encompassed within the business use exclusion. Plaintiff's position is unfounded.

We first note that the modifier "*the*" preceding "work" and "business" in the dictionary definition may likewise be reasonably interpreted as designating the *primary* employment in which an individual engages regularly. This interpretation of the definition is reasonable particularly when viewed in context with "occupation" and "profession." *See State v. Emery*, 224 N.C. 581, 583, 31 S.E.2d 858, 860 (1944) ("*[n]oscitur a sociis* is a rule of construction applicable to all written instruments"); *see also Morecock v. Hood*, 202 N.C. 321, 323, 162 S.E. 730, 731 (1932) ("[t]he maxim is, *noscitur a sociis*: the meaning of a doubtful word may be ascertained by reference to the meaning of words with which it is associated").

In addition, examining the "facts of the case," *Roach*, 248 N.C. at 701, 104 S.E.2d at 825, we observe that uncontradicted evidence in the record reflects that Briley was a full time employee of DuPont, where he worked as a spinning operator. This position was his "pri-

mary occupation" and "primary source of income." Briley considered tree trimming at best to be a sideline or hobby, and did "not consider [himself] to be engaged in any other type of trade, occupation or profession with regard to [his] tree trimming activities." He stated he began cutting trees in his own yard which "got to be something [he] enjoyed," that "from there it was helping out at the church to get some trees down," that "it just sort of grew as time went on." Briley did not always charge for a job, and when doing so presented no written bill, but simply "[told customers] how much they owe[d] [him]." Moreover, he neither advertised, nor listed in the white or yellow pages of the telephone directory, nor had stationery, letterhead, business cards or billing invoices.

However, the record also indicates Briley engaged in tree trimming over several years, sometimes as much as twenty hours per week, was frequently compensated, and had earned approximately $6,000 per year from the activity in each of the three years preceding the accident.

Assuming *arguendo* that a permissible interpretation of "trade" would include Briley's tree trimming, therefore, the word, "when viewed in the light of the facts of the [instant] case," *Roach*, 248 N.C. at 701, 104 S.E.2d at 825, remains capable of differing reasonable constructions, one favoring coverage, the other not. In such event, "trade" must be construed so as to afford coverage. *Id.; see also State Capitol Ins.*, 318 N.C. at 538, 350 S.E.2d at 68 (clause contained in policy of insurance which is subject to two reasonable meanings, one providing for coverage and the other not, must be construed in favor of finding coverage).

The Georgia appellate court, in a 1991 case involving similar facts, reached a like result. In *United Services Auto. Ass'n v. Lucas*, 408 S.E.2d 171 (Ga. Ct. App. 1991), plaintiff insurance company denied coverage under the identical exclusionary provision at issue herein following injury to a child in the care of the insured babysitter. *Id.* at 171-172. The record revealed the insured had been a licensed day care operator for approximately four years, regularly took care of children, earned approximately $100 per week, and reported all income to the IRS while deducting expenses associated with her babysitting. *Id.* at 172. On the other hand, further evidence indicated that no more than seven children were cared for during the year of the injury, four of whom were her own grandchildren, and "that she offered her services as both a favor and a convenience to parents

who lived in the neighborhood." *Id.* at 173. Noting that the policy contained "no definition of business other than to state that it includes 'trade, profession, or occupation,' " the court stated it was "unable to conclude that the facts of this case come within the exclusion" set out in the policy. *Id.* As in this jurisdiction, Georgia requires construction in favor of the insured if policy language is susceptible to two different constructions, and the court based its decision in part on this principle. *Id.*

In the event we should determine, as we have, that the policy definitions of "business" refer to an individual's principal work activity, plaintiff further insists that use of the word "includes" in the policy permits an alternative definition. Specifically, plaintiff urges us to adopt Black's Law Dictionary definition of "business" as "[e]mployment, occupation, profession, or commercial activity engaged in for gain or livelihood," Black's Law Dictionary 198 (6th ed. 1990). We decline to do so.

First, "includes" implies the existence of a comprehensive definition somewhere beyond the face of the policy. As stated above, exclusionary provisions are not favored by the law, and we believe the burden is on the insurance company to set forth clearly and unambiguously a definition of "business" that eliminates guesswork on the part of its insured. *Cf. Gaynor v. Williams*, 366 So.2d 1243, 1244 (Fla. Dist. Ct. App. 1979) (citations omitted) ("[s]ince the word 'includes' is a term of expansion, the definition here must be read to mean that business [as defined in the policy] includes, but *is not limited to* the 'trade, profession or occupation' of the insured"; hence banker's "business pursuits included" his operation of an apartment house, and umbrella personal liability policy containing business pursuits exclusion did not cover accident arising out of apartment house operation).

Second, it is well established that in construing terms of a contract of insurance,

> words . . . should, in the absence of evidence of a contrary intent, be given the meaning which they have for laymen in . . . daily usage, rather than a restrictive meaning which they may have acquired in legal usage.

*Insurance Co. v. Insurance Co.*, 266 N.C. 430, 438, 146 S.E.2d 410, 416 (1966). Accordingly, definitions contained in "standard, nonlegal dictionaries may be a more reliable guide to the

construction of an insurance contract than definitions found in law dictionaries." *Id.*

Finally, plaintiff in the main controls the language set out in policies of insurance which it issues. Had it desired "business" to be defined as provided in Black's Law Dictionary, it was in a position to draft its policies of insurance accordingly. *See Insurance Co. v. Insurance Co.*, 266 N.C. at 437-38, 146 S.E.2d at 416 ("[w]hen an insurance company, in drafting its policy of insurance, uses a 'slippery' word to mark out and designate those who are insured by the policy, it is not the function of the court to sprinkle sand upon the ice by strict construction of the term").

In sum, based upon the definition of "business" in the policy, the provision as applied to Briley's activities as a tree trimmer is ambiguous. As a result of this ambiguity, the phrase must be broadly interpreted in favor of coverage and therefore does not exclude Briley's tree trimming. Defendants thus met their burden of showing they were entitled to judgment as a matter of law, and the trial court did not err in the entry of its 2 October 1995 order.

Affirmed.

Judges WYNN and McGEE concur.