Lockerman v. South River Elec. Membership Corp., 2012 NCBC 46.

STATE OF NORTH CAROLINA    IN THE GENERAL COURT OF JUSTICE
               SUPERIOR COURT DIVISION
COUNTY OF SAMPSON        11 CVS 152

| | | |
|---|---|---|
| TED B. LOCKERMAN, ADMINISTRATOR D.B.N. OF THE ESTATES OF ELLEN DUDLEY SPELL, DECEASED, And SULIE DANIELS SPELL, DECEASED,<br>  On Behalf of the Estates and<br>  On Behalf of All Others<br>  Similarly Situated, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
|      Plaintiffs,<br>  v. | )<br>)<br>)<br>) | **ORDER ON DEFENDANT'S FIRST AND SECOND MOTIONS FOR SUMMARY JUDGMENT** |
| SOUTH RIVER ELECTRIC MEMBERSHIP CORPORATION, a North Carolina Electric Membership Cooperative, | )<br>)<br>)<br>)<br>) | |
|      Defendant. | )<br>) | |

{1}  THIS MATTER is before the court on Defendant's motions for summary judgment brought pursuant to Rule 56 of the North Carolina Rules of Civil Procedure ("Rule(s)"), including: (1) Defendant's First Rule 56 Motion for Summary Judgment: Discounting Capital Credits ("First Motion"); and (2) Defendant's Second Rule 56 Motion for Summary Judgment: Whether Cooperatives Owe Fiduciary Duties to the Estates of Deceased Former Members With Respect to the Timing and Procedures for Retiring Capital Credits ("Second Motion" and collectively, "Motions"). For the reasons stated, the Motions are GRANTED.

*Andrew M. Jackson, and Stevens Martin Vaughn and Tadych, PLLC, by K. Matthew Vaughn and Michael J. Tadych for Plaintiff Ted B. Lockerman, Administrator D.B.N. of the Estates of Ellen Dudley Spell and Sulie Daniels Spell.*

*Smith and Christensen, LLP, by W. Britton Smith, Jr. and Aaron M.
Christensen, for Defendant South River Electric Membership Corporation, a
North Carolina Electric Membership Cooperative.*

Gale, Judge.

## I.  THE PARTIES

{2}     Plaintiff Ted B. Lockerman is Administrator *de bonis nom* for the
estates of Ellen Dudley Spell and Sulie Daniels Spell (the "Estates").

{3}     Ellen Dudley Spell was a citizen and resident of Sampson County,
North Carolina, and a member of South River Electric Membership Corporation
("SREMC") at the time of her death on October 3, 2002.

{4}     Sulie Daniels Spell was a citizen and resident of Sampson County,
North Carolina, and a member of SREMC at the time of her death on April 28,
2009.

{5}     Defendant SREMC is a North Carolina Electric Membership
Cooperative ("EMC").

{6}     The Estates complain that SREMC, or its agents and employees,
improperly retired the patronage credits of their decedents.

{7}     The Estates propose to represent a class comprised of those similarly
situated.

## II.  PROCEDURAL BACKGROUND

{8}     This class action was filed in Sampson County Superior Court on
February 9, 2011.  The matter was designated a mandatory complex business case
by the March 14, 2011 Order of the Chief Justice of the Supreme Court of North
Carolina and assigned to the undersigned.

{9}     Following conferences with the Parties, the court entered a Phase One
Case Management Order which provides that the Parties would first provide a
statement of stipulated facts, and that SREMC would then present motions on two
legal questions which the Parties believed could and should be resolved in order to
direct further pre-trial proceedings.  Those questions are: (1) whether North

Carolina electric cooperatives may lawfully discount capital credits of deceased members when they are retired early; and (2) whether SREMC owes a fiduciary duty to those members with respect to the timing and procedures for retiring capital credits.

{10}  The Parties submitted their Joint Stipulations of Fact ("Stipulation(s)") on November 23, 2011.

{11}  Defendant filed its Motions on December 27, 2011.  The Motions have been fully briefed and argued, and are ripe for disposition.

## III.  FACTUAL BACKGROUND

{12}  The court does not make findings of fact when ruling upon a motion for summary judgment, but to provide context for its ruling, it is appropriate to state facts which are either uncontested or which have been construed in favor of the party opposing summary judgment.  *See Hyde Ins. Agency v. Dixie Leasing Corp.*, 26 N.C. App. 138, 215 S.E.2d 162 (1975).

{13}  SREMC is a member-owned electric cooperative providing electric service to members in parts of Sampson, Harnett, Cumberland, Johnston, and Bladen Counties in North Carolina.  (Compl. ¶ 7.)  All SREMC operations are for the benefit of its members, and not for profit.  (Compl. ¶¶ 28-29.)

{14}  The North Carolina Electric Membership Corporation Act (the "Act") provides that the board of an EMC "shall have power to do all things necessary or convenient in conducting the business of a corporation."  N.C. Gen. Stat. § 117-14. The Act vests EMCs "with all power necessary or requisite for the accomplishment of its corporate purpose and capable of being delegated by the legislature; and no enumeration of particular powers hereby granted shall be construed to impair any general grant of power herein contained, nor to limit any such grant to a power or powers of the same class as those so enumerated."  N.C. Gen. Stat. § 117-17.

{15}  SREMC each year determines the excess of revenue over the cost of doing business, which is referred to as "margin."  This margin is retained as capital

credits each year.  (Compl. ¶¶ 29-30.)  Capital credits are assigned annually to members based on their prorated electricity usage.  (Compl.  ¶¶ 30-31).

{16}     SREMC sets a retirement cycle for capital credits.  SREMC currently makes capital credit retirements nineteen years after the year in which the credits were assigned.  (Compl. ¶ 52.)  SREMC directors have discretion to retire capital credits prior to the expiration of the retirement cycle.  (Compl. ¶ 41.)  Members receive no interest or dividends on their accumulated capital credits, and SREMC directors may shorten or lengthen the retirement cycle or make partial refunds of capital credits.  (Compl. ¶ 43.)  SREMC may use assigned capital credits indefinitely and without cost.  (Compl. ¶ 45.)

{17}     A deceased member's right to accumulated capital credits becomes an asset of the decedent's estate.  (Compl. ¶ 54.)

{18}     Article IX of SREMC's Bylaws provides for member capital credits and has remained unchanged since 1994, although other provisions of the Bylaws have been modified.  (Stipulations ¶ 49.)

{19}     Bylaw Section 9.02 provides the method of determining member capital credits and provides that "[i]f at any time prior to dissolution or liquidation, the Board of Directors shall determine that the financial condition of the Cooperative will not be impaired thereby, the capital then credited to patrons' accounts may be retired in full or part."

{20}     Prior to August 1, 2001, upon a decedent's request, SREMC would retire capital credits accounts of deceased members without discount. (Compl. ¶ 14.)

{21}     SREMC amended its Bylaws on June 4, 2001 to allow for discounting early retirements of capital credits.  (Stipulations ¶ 47.)  Bylaw Section 7.03, as modified on June 4, 2001, allows for calculating Discounted Capital Credits based on the Wall Street Prime Rate as of the preceding December 31 and the number of years of patronage capital remaining.  The amount discounted is treated as "net savings" and added to SREMC's capital.

{22}     SREMC does not provide a general notification to its members that changes to its Bylaws are being contemplated.  (Stipulations ¶¶ 55, 56.)

{23} SREMC's Bylaws are available to current members at any time upon request. (Stipulations ¶ 46.)

{24} After August 1, 2001, SREMC has discounted early capital credits retirements and converted the Net Savings to permanent equity. (Compl. ¶ 11.)

{25} The Estates complain, *inter alia,* that they were not properly advised as to the change in procedure for retiring credits of deceased members at a discount, that SREMC agents or employees did not properly follow the procedure provided by Bylaw Section 7.03, that the Estates were not provided complete or accurate information when being asked to consent to an early retirement of their decedent's capital credits, and that SREMC otherwise violated fiduciary duties owed to its members.

{26} The Estates' administrators signed a standard application form used to apply for early retirement of SREMC capital credits. ( Stipulations ¶¶ 5-7.) Application forms included an area labeled "FOR OFFICE USE ONLY – Summary of Capital Credits Due Estate," which section was not always completed at the time the application was signed by a decedent's representative. (Stipulations ¶¶ 19, 24.) Each application form included the following printed language:

> I do hereby request that South River Electric Membership Corporation refund the aforesaid estate all credit accruing to the account of the deceased growing out of or in connection with the patronage capital which the deceased furnished to the Cooperative through the last year for which such capital credits have been allocated. I understand that this Application represents a request for early retirement of the stated capital credits and that a discount factor (as approved by the Cooperative's Board of Directors) will apply to this retirement and refund.

{27} (Stipulations ¶¶ 10, 25.) The application form listed the then-current discount factor as a percentage. (Stipulations ¶¶ 10, 25.) In some instances, the discount percentage was left blank when signed by the legal representative.

## IV. STANDARD OF REVIEW

{28} Summary judgment is proper in a declaratory judgment action "when the pleadings, depositions, answers to interrogatories, admissions and affidavits show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *N.C. Farm Bureau Mut. Ins. Co. v. Briley*, 127 N.C. App. 442, 444, 491 S.E.2d 656, 657 (1997) (citations omitted), *disc. review denied*, 347 N.C. 577, 500 S.E.2d 82 (1998). "All facts asserted by the adverse party are taken as true, and their inferences must be viewed in the light most favorable to that party." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (citations omitted).

{29} The purpose of summary judgment is to bring litigation to an early decision on the merits without the delay and expense of a trial where it can be readily demonstrated that no material facts are in issue. *McNair v. Boyette*, 282 N.C. 230, 235, 192 SE2d 457, 460 (1972).

{30} An EMC is a distinct statutory organizational form, created by the Act. While cases and statutes governing general corporations and non-profit organizations may be instructive, they are not directly controlling because of the unique nature of EMCs. *See, e.g., Peoples Elec. Coop. v. W. Farmers Elec. Coop.*, 746 F. Supp. 2d 1202, 1205 (W.D. Okla. 2010).

## V. ANALYSIS

### A. SREMC'S AUTHORITY TO DISCOUNT CAPITAL CREDITS

{31} The First Motion requests the court to declare that "North Carolina electric cooperatives may lawfully discount special retirements to the estates of deceased former members." In essence, the motion seeks a declaration that SREMC Bylaw Section 7.03 is lawful and provides for a lawful procedure. The Motion does not seek to resolve whether individual applications were correctly handled pursuant to that procedure.

{32}    The Estates' response to the First Motion makes clear that they do not challenge SREMC's legal authority to adopt a discounted capital account retirement procedure so long as it follows proper procedure.  The Estates contend that:

> SREMC's motion fundamentally misperceives plaintiff's position.  The plaintiff does not contend that electric cooperatives in this state lack the power to discount retirements of capital credits, in appropriate circumstances and following appropriate procedures.  Rather, it is plaintiff's position that the way in which SREMC adopted, failed to disclose and carried out its discounting scheme, makes the scheme improper and actionable.

(Pls.' Memo. in Opp'n to the First Mot. 2-3.)

{33}    Stated otherwise, the Estates contend that "the question is not, as SREMC poses it, whether N.C. electric cooperatives may *theoretically* discount when retiring capital accounts."  (Pls.' Memo. in Opp'n to the First Mot. 2-3, *emphasis in original*.)

{34}    SREMC invokes the business judgment rule both to assert that any attack on its directors' adoption of a discounted capital credit retirement system is precluded, and to preclude the assertion that implementation of that policy cannot be judged to be a fiduciary duty.  *See Hammonds v. Lumbee River Elec. Mbrshp. Corp.,* 178 N.C. App. 1, 22, 631 S.E.2d 1, 14 (2006).  The business judgment rule is an appropriate standard to examine SREMC's adoption of the policy in the first instance, but it is not the standard to determine whether the adopted policy was then fairly and appropriately applied to individual estates applying for early retirement.

{35}    The issue of SREMC's authority to adopt the policy is properly presented as a declaratory judgment claim.  *State ex rel. Utils. Comm'n v. Carolina Water Serv.*, 149 N.C. App. 656, 658, 562 S.E.2d 60, 62 (2002).

{36}    The Court of Appeals has made clear that the business judgment will protect certain exercises of power statutorily vested in EMC directors.

> [W]e agree with Defendants that N.C. Gen Stat. § 117-14 . . . and §117-17  . . . unequivocally establish the legislature's intent that a 'rule of deference,' i.e., the business judgment rule, be applied to restrict

> judicial oversight of the actions of rural electric cooperative Board
> members unless there is no rational basis for the Board's decisions.

*Hammonds*, 178 N.C. App. at 22, 631 S.E.2d at 14.

{37}  The Estates concede that an EMC board may exercise discretion to adopt a discounting system for retiring member credits and acknowledge that the IRS has recognized cooperatives' exercise of discretion in making early retirements. (Pls.' Memo. in Opp'n to the Second Mot. 5 (citing I.R.S. Priv. Ltr. Rul. 201143021 (August 1, 2011) (determining that a cooperative could discount early retirement of capital credits without jeopardizing its tax-exempt status)).)

{38}  The record establishes that the SREMC Board was advised by its auditors that adopting a discounting method would guard against potential unfairness which might result from rewarding deceased patrons over patrons who must await the end of the retirement cycle before receiving any return of their credit. (Stipulations ¶ 50 (Ex. F).)

{39}  Further, while not directly controlling, the court notes that legislatures and courts in other jurisdictions recognize the purposes achieved by discounting early retirements. *See, e.g.*, S.C. Code Ann. § 33-49-460(d) (2011), *as amended by* 2011 Act No. 44, § 2; Valley Elec. Ass'n, *Capital Credits*, http://www.vea.coop/content/capital-credits#dies (last visited Aug. 8, 2012).

{40}  The court finds that SREMC's discretionary determination to adopt Section 7.03 was a lawful exercise of the director's business judgment.

{41}  The Estates argue that Section 7.03 of SREMC's Bylaws is nevertheless infirm because it constituted a change in procedure for retiring credits of deceased members, but SREMC did not provide advance notice to its members of its intent to modify its Bylaws. The court finds no basis to require such advance notice or to invalidate the bylaw because of a lack of such notice.

{42}  Clearly, at the time they requested early retirement of capital credits, the Estates were well aware that SREMC would implement a discounting program for early retirements. The early retirement of a decedent's capital credit requires advance application by and consent to retirement by the decedent's personal

representative. Each of the application forms presented by the Estates in this case expressly note that a discounting procedure would be employed.

{43}   SREMC is entitled to a declaration that it lawfully adopted the procedure defined by Bylaw Section 7.03 for retiring capital credits of deceased patrons using the discounting method provided by that section, and that this procedure is lawful when applied in accordance with its terms. Stipulations ¶¶ 4, 21, 35.

{44}   Defendant's First Motion is therefore GRANTED.

{45}   This grant of summary judgment on the First Motion does not resolve claims that the Estates' credits were improperly retired pursuant to the policy adopted in Bylaw Section 7.03.


## B.  SREMC'S DUTY TO ITS MEMBERS WHEN RETIRING CAPITAL CREDITS

{46}   The Second Motion requests the court to declare that "North Carolina electric cooperatives do not owe fiduciary duties to the estates of deceased former members with respect to the timing and procedures for retiring capital credits."

{47}   The Second Motion then seeks a ruling as to whether the Estates' claims that retirements of their decedent's credits were not properly retired are properly stated as breaches of a fiduciary duty owed by SREMC.  The Estates responded to the Second Motion with a claim that the record is sufficiently complete that the court can utilize Rule 56(c) to grant summary judgment for the Estates. (Pls.' Memo. in Opp'n to the First Mot. 2.)  The fiduciary duty issue then arises in the nature of cross-motions for summary judgment.

{48}   In its opening brief, SREMC focused its argument on the assertion that imposing a fiduciary duty by SREMC directors to individual members would be inconsistent with statutory provisions which protect directors of non-profit corporations from such duties. *See* N.C. Gen. Stat. § 55A-8-30(f).  SREMC also asserts that any such fiduciary duty would clash with the legislative policy which charges EMCs with "promoting and encouraging the fullest possible use of electric

energy in the rural section of the State by making electric energy available to inhabitants of the State at the lowest cost consistent with sound economy and prudent management of the business of such corporations." N.C. Gen. Stat. § 117-10.

{49}  As noted, SREMC also invokes the business judgment rule to defeat the imposition of a fiduciary duty. This assertion would be more apposite if the Estates' attack were on discretionary exercises by the directors. However, the Estates argue that, "[t]he question is not whether members of SREMC's board of directors owe fiduciary duties to SREMC; rather the question is whether the corporate entity, SREMC, owes fiduciary duties to the plaintiff's decedents and others similarly situated regarding the entity's handling of their capital accounts." (Pls.' Memo. in Opp'n to the Second Mot. 1-2.)

{50}  The court does not accept the Estates' assertion that the business judgment rule can never apply in a direct shareholder or member action, but the Estates are correct that generally the business judgment rule does not apply when a shareholder or member asserts a contract or property right owed by the corporation itself. *See Franklin Capital Associates, L.P. v. Almost Family, Inc.,* 194 S.W. 2d 392 (Tenn. App. 2005). The wording of SREMC Bylaw Section 7.03 clouds the issue somewhat because it provides that "the Board may retire" a deceased member's capital credit. More typically, a corporate board would adopt a policy but leave the implementation to administration and staff.

{51}  There is an important distinction between a claim that attacks the board's exercise of discretion in adopting a policy, and a claim that the policy was not administered fairly. The business judgment rule contemplates the first claim but not the second.

{52}  The claims which focus on how SREMC implemented Bylaw Section 7.03 does not rest on the exercise of director discretion to which the business judgment rule is addressed. As stated by the Estates, their:

> claims do not arise primarily from any business judgment exercised by SREMC's board in creating the discounting scheme or in approving

amounts paid out pursuant to the scheme. Rather, the claims are based on the cooperative's failure to notify its members of the discounting scheme and the actions taken by the company, through its employees, in carrying out the scheme.

(Pls.' Memo. in Opp'n to the First Mot. 16.)

{53} Whether or not SREMC owed the Estates a fiduciary duty when retiring their capital credits is not then governed by the business judgment rule.

{54} The Estates claim that a fiduciary duty arises because the relationship between SREMC and the Estates is one in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *See Curl v. Key,* 311 N.C. 259, 264, 316 S.E.2d 272, 275 (1984).

{55} The North Carolina Supreme Court has indicated that a "fiduciary relation" has no precise definition, because such relationships should be policed in equity without the constraint of precise rules. *Abbitt v. Gregory,* 201 N.C. 577, 598, 160 S.E. 896, 906-07 (1931). A fiduciary relationship can be either *de jure,* in which the fiduciary relationship arises a matter of law from the legal nature of the relationship, or *de facto,* where the fiduciary relationship arises from the particular circumstances of the relationship between the parties. *Id.; see also Dalton v. Camp,* 353 N.C. 647, 651, 548 S.E.2d 704, 707-08 (2001), *HAJMM Co. v. House of Raeford Farms, Inc.,* 328 N.C. 578, 588, 403 S.E.2d 483, 489 (1991).

{56} The Estates and SREMC do not stand in a legal relationship which imposes a *de jure* fiduciary relationship. The court then must determine whether the Estates have adequately asserted a *de facto* fiduciary relationship.

{57} Where a plaintiff has evidence upon which a special relationship of trust and confidence might be found, the existence of a fiduciary duty is generally a question of fact for the jury. However, the court can determine the adequacy of the evidence to support a jury finding as a question of law. *Pacheco v. Rogers & Breece, Inc.,* 157 N.C. App. 445, 452 (2003) citing *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.,* 139 N.C. App. 360, 367, 533 S.E.2d 827, 832 (2000).

{58}     In examining the adequacy of the evidence in this case, the court construes the evidence favorably to the Estates so long as the Estates allegations are consistent with the facts to which the Estates have stipulated.

{59}     In sum, the Estates contend that the special relation adequate to impose a fiduciary duty arises from the following:

a. SREMC is accountable to and charged with serving the interests of its individual members;

b. SREMC has a monopoly within most of its service area, and sets its own rates;

c. Operating margins are required to be allocated to SREMC's patrons and SREMC has the legal obligation to retire those credits, such that they are effectively interest-free loans that must be repaid;

d. Because a patron's only choice is whether or not to use electricity, a patron has no discretion whether or not to participate in the patronage program and whether to extend such a loan;

e. SREMC historically retired credits of deceased members without discounting, such that representatives of deceased members had a reasonable expectation that credits for their decedents would be retired without discounting, particularly considering that SREMC did not provide advance notice that it had implemented a discounting program for retiring those credits;

f. A member's capital credit is in the nature of a contract guaranteed by SREMC's Bylaws which cannot be adversely affected without fair notice;

g. SREMC improperly implemented its retirement policy by failing to disclose the individual components of the formula which led to the final retired credit made, including the undiscounted capital balance, the discount rate and the amount of discount taken by application of such rate;

h. At least in some instances, SREMC imposed discount rates that were either higher or lower than the rate defined by the Bylaws, or than the rate that SREMC may have stated on the face of a representative or a deceased member's application for early retirement;

i. SREMC did not make full disclosure of discounted amounts when remitting checks to clerks of court;

j. SREMC did not advise applicants that a waiver of the discounting program could be requested and could be approved by the SREMC board; and

k. The discounted amount benefits SREMC because it is assigned as "net savings" no longer subject to claims by its members.

(Pls.' Memo. in Opp'n to the Second Mot. 7-8.)

{60}    Certain stipulated facts cut squarely against the Estates' conclusory assertions.

{61}    No member or representative of a deceased member is required to have a capital credit retired early.   Early capital credit retirement is entirely a voluntary program dependent upon a written request on behalf of the deceased member. (Stipulations ¶ 52 (Ex. H, Section 7.03).)

{62}    The request form discloses on its face that a discount factor will be applied in determining the amount of capital credit to be refunded, and each of the applications the Estates signed included this notice.  (Stipulations ¶ 4 (Ex. A), ¶21 (Ex. C), ¶ 35 (Ex. D).)

{63}    While the Estates allege that SREMC either did not disclose the actual discount rate being used or did not properly apply a disclosed discount rate, there is no reasoned basis in light of the disclosures on the form to assert that a special relationship of trust and confidence arose because SREMC had historically retired deceased credits at full value.

{64}    As to a claim that the Estates were foreclosed from knowing the details of the discounting program, the application discloses that the discount had been

adopted by the SREMC Board. The Bylaws outlining the discount policy were available to the Estates upon request. (Stipulation ¶ 46.)

{65} SREMC members have no guarantee that their credits will be retired early. SREMC Bylaws provide for redeeming capital credits only where doing so will not be adverse to SREMC's financial health. Our Court of Appeals has recognized that availability of a patronage capital credit cannot be automatically assumed at the time a patron purchases electricity. *Four Cty. Elec. Membership Corp.*, 96 N.C. App. at 425, 386 S.E.2d at 112. Other courts have recognized that patron credits cannot be considered indebtedness which is presently due and payable. *In re E. Me. Elec. Coop., Inc.*, 125 B.R. 329, 336 (Bankr. D. Me. 1991) (*quoting Clarke Cty. Coop. v. Read*, 139 So. 2d 639, 641 (1962)); *see also Evanenko v. Farmers Union Elevator*, 191 N.W.2d 258, 261 (N.D.1971)).

{66} The Estates additionally contend that SREMC must be held accountable as a fiduciary because it had dominion and control and "figuratively held all the cards" with regard to facts relevant to the discounting of the Estates' credits. (Pls.' Memo. in Opp'n to the Second Mot. 10.) *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347-48 (4th Cir. 1998) ("Only when one party figuratively holds all the cards – all the financial power or technical information, for example – have North Carolina courts found that the 'special circumstance' of a fiduciary relationship has arisen.").

{67} The court concludes that there is no evidentiary basis to support this claim.

{68} It is true that SREMC perhaps did not, without request, disclose all knowledge it had about the transactions in retiring credits, such as the exact balance of the deceased members' capital credits before discount, and the exact formula used for calculation of the discount. However, these circumstances without more do not evidence the domination and control which leads to a finding of a fiduciary relationship. Similar circumstances arise in various kinds of transactions where one party is more powerful or has more information, yet is not a fiduciary

{69}    The Estates also shared some control over the retirement transaction. They retained the right to choose whether to receive an early payout or to wait for payout when the capital credits reached their scheduled date of maturity.

{70}    SREMC did not "figuratively hold all the cards." Pursuant to the adopted policy, no retirement of a decedent's capital credit would be made without the decedent's representative's consent. The Estates may ultimately be able to prove that their consent was not an informed one, but the court concludes that such an inquiry should not be governed by the law of fiduciary duty.

{71}    The court has carefully considered the Estates' argument that other decisions recognize that an EMC may owe fiduciary duties, and that it then follows that the assertion that such a duty exists here should survive summary judgment. Having done so, the court concludes that these decisions, even if they recognize a potential fiduciary duty to members in some instances, do not support a finding of such a duty on the facts of this case. The cases and IRS letter rulings the Estates discuss challenge cooperatives' failures to adhere to the core objective of providing services on a non-profit basis and with equal allocation of rights to their members, which is a consequence of the special nature of a cooperative. Such considerations do not arise in examining whether SREMC appropriately applied its policy allowing for early retirement of patronage capital at a discounted amount.

{72}    In sum, the Estates have asserted that the Bylaws created contractual expectations that their decedents' capital credits would be retired consistently with SREMC's Bylaws. However, considering all facts established by the record, the contractual expectations did not create a special relationship that rise to the level necessary to impose fiduciary duties on SREMC.

{73}    SREMC's liability, if any, is then in the nature of contract, a breach of which, depending upon proof, may have been accompanied by factual misrepresentations. Resolution of these claims awaits further proceedings and are not within the scope of the two Motions.

{74}    Defendant's Second Motion is GRANTED.

## VI.  CONCLUSION

{75}    NOW THEREFORE, based upon the foregoing, it is ORDERED that Defendant's First Motion is GRANTED, and that Defendant's Second Motion is GRANTED.

{76}    The matter is set for a status conference on September 6, 2012 at 1:30 p.m. at the North Carolina Business Court, 201 North Greene Street, Greensboro, North Carolina.  The Parties are directed to confer in advance to discuss provisions to be included in a Case Management Order for subsequent proceedings.


IT IS SO ORDERED, this 8th day of August, 2012.