Duke Energy Carolinas, LLC v. AG Ins. SA/NV, 2018 NCBC 52A (Corrected 06-05-2018).

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION |
| MECKLENBURG COUNTY | 17 CVS 5594 |

<table>
<tr>
<td>

DUKE ENERGY CAROLINAS, LLC<br>
and DUKE ENERGY PROGRESS,<br>
LLC,<br>
<br>
    Plaintiffs,<br>
<br>
v.<br>
<br>
AG INSURANCE SA/NV (f/k/a<br>
L'Etoile S.A. Belge d'Assurances); et<br>
al.,<br>
<br>
    Defendants.
</td>
<td>

**ORDER AND OPINION ON DUKE'S FIRST MOTION TO COMPEL DISCOVERY [CORRECTED]**
</td>
</tr>
</table>

1. **THIS MATTER** is before the Court upon Plaintiffs Duke Energy Carolinas, LLC and Duke Energy Progress, LLC's (together, "Duke") First Motion to Compel Discovery (the "Motion" or "Duke's Motion") in the above-captioned case. Having considered the Motion, the materials submitted in support of and in opposition to the Motion, the arguments of counsel at the May 2, 2018 hearing on the Motion, and other appropriate matters of record, the Court hereby **GRANTS** the Motion **in part** and **DENIES** the Motion **in part**.

*Hunton & Williams LLP, by Frank E. Emory, Jr., Ryan G. Rich, and Patrick M. McDermott, and Pillsbury Winthrop Shaw Pittman LLP, by Mark. J. Plumer, Matthew G. Jeweler, Aaron D. Coombs, Latosha M. Ellis, and William C. Miller, for Plaintiffs Duke Energy Carolinas, LLC and Duke Energy Progress, LLC.*

*Golding, Holden & Pope, by James W. Pope., and Hinkhouse Williams Walsh LLP, by William C. Joern and Richard McDermott, for Defendants AG Insurance SA/NV, Columbia Casualty Company, and Continental Insurance Company.*

*Butler Weihmuller Katz Craig, by T. Nicholas Goanos and L. Andrew Watson, and Jackson & Campbell PC, by Erin N. McGonagle and*

*Cristopher M. Quinlan, for Defendants AIG Property Casualty Company, American Home Assurance Company, and Lexington Insurance Company.*

*McAngus, Goudelock & Courie, PLLC, by John T. Jeffries, John Barringer, and Jeffrey Kuykendal, and Karbal Cohen Economou Silk Dunne LLC, by Roderick Dunne and Jocelyn F. Cornbleet, for Defendants Allianz Global Risks US Insurance Company, Allianz Underwriters Insurance Company, Fireman's Fund Insurance Company, and Assurances Generales de France.*

*Hamilton Stephens Steele & Martin, PLLC, by Aaron Lay and Keith Merritt, and Windels Marx Lane & Mittendorf LLP, by Eric J. Konecke and Stefano V. Calogero, for Defendant Allstate Insurance Company.*

*Bradley Arant Boult Cummings LLP, by Corby Cochran Anderson and Matthew S. DeAntonio, and Freeborn & Peters LLP, by Bruce Engel, Patrick Frye, and Ryan Rudich, for Defendant Arrowood Indemnity Company.*

*Goldberg Segalla, by David G. Harris, II and David L. Brown, and Rivkin Radler LLP, by Alan S. Rutkin, George D. Kappus, Steven Zuckermann, and Robert Tugander, for Defendants Associated Electric and Gas Insurance Services Ltd., Berkshire Hathaway Direct Insurance Company, and TIG Insurance Company.*

*Fitzgerald Litigation, by Andrew L. Fitzgerald, and Cohn Baughman & Martin, by William M. Cohn, Frank Slepicka, and Christopher P. Hemphill, for Defendants Century Indemnity Company, Federal Insurance Company, and Pacific Employers Insurance Company.*

*Cranfill Sumner & Hartzog LLP, by Susan K. Burkhart and Samuel H. Poole, and Michaels, Schulwolf & Salerno, P.C., by Scott M. Salerno, for Defendant Employers Mutual Casualty Company.*

*McAngus, Goudelock & Courie, PLLC, by John T. Jeffries, John Barringer, and Jeffrey Kuykendal, and Budd Larner P.C., by Michael Balch and David I. Satine, for Defendant General Reinsurance Corporation.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by D.J. O'Brien, III, and Karbal Cohen Economou Silk Dunne LLC, by Dena Economou and Gerald Ziebell, for Defendants First State Insurance Company and Twin City Fire Insurance Company.*

*Smith Moore Leatherwood LLP, by Timothy P. Lendino, and Clausen Miller PC, by Michael L. Duffy and Ilene Korey, for Defendant Old Republic Insurance Company.*

*Gallivan, White & Boyd, P.A., by James M. Dedman, IV, for Defendants Alleanza Assicurazioni S.P.A. and Generali Iard S.A.*

*James, McElroy & Diehl, P.A., by Adam L. Ross and Jennifer M. Houti, and Kennedys CMK LLP, by James J. Hickey and Melissa Sereda, for Defendant United States Fire Insurance Company.*

Bledsoe, Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

2.     This action focuses on whether Defendants—all insurers who issued excess-level insurance policies to Duke or its predecessors—are obligated to compensate Duke for alleged liabilities linked to coal combustion residuals ("CCRs"), i.e., coal ash, at certain Duke-owned power plants in North and South Carolina.

3.     Duke's discovery requests that are the subject of the Motion (the "Discovery Requests" or "Requests") were first served on October 10, 2017.  Each Defendant objected to various interrogatories or requests for production contained in the Discovery Requests.  After unsuccessfully attempting to resolve the dispute with Defendants, Duke submitted a Business Court Rule ("BCR") 10.9 summary and request for a telephone conference to the Court.

4.     Under BCR 10.9(b)(1), the Court thereafter ordered Duke to file the Motion and the parties to submit briefs on the Motion.  Duke submitted a brief in support of

its Motion. A large group of Defendants ("Certain Defendants")[1] submitted a brief opposing Duke's Motion. Defendants Associated Electric & Gas Insurance Services Limited ("AEGIS"), Berkshire Hathaway Direct Insurance Company (f/k/a American Centennial Insurance Company) ("ACI") and TIG Insurance Company (as successor to Ranger Insurance Company) ("Ranger," and collectively with AEGIS and ACI, the "AEGIS Defendants") submitted a separate, joint brief opposing Duke's Motion, asserting their own arguments and joining Certain Defendants' arguments. Defendant United States Fire Insurance Company individually joined Certain Defendants' opposition to Duke's Motion.

5.     The Court held a hearing on Duke's Motion on May 2, 2018, at which all parties that have appeared in this action were represented by counsel. The Motion is now ripe for resolution.

II.

LEGAL STANDARD

6.     North Carolina Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." N.C. R. Civ. P. 26(b)(1). "The relevancy test for discovery is not the same as the relevancy test for admissibility into evidence. To be relevant for purposes of discovery, the information need only be 'reasonably calculated' to lead to the discovery of admissible evidence." *Shellhorn v. Brad Ragan,*

---

[1] Certain Defendants are identified on Exhibit 1 to their Joint Memorandum of Law in Opposition to Duke's First Motion to Compel Discovery. (Certain Def. Joint Mem. Law Opp'n Duke's First Mot. Compel Disc. Ex. 1, ECF No. 291.1.)

*Inc.*, 38 N.C. App. 310, 314, 248 S.E.2d 103, 106 (1978). "Although [Rule 26] should be construed liberally neither party should be allowed to roam at will in the closets of the other. . . . One party's need for information must be balanced against the likelihood of an undue burden imposed upon the other." *Willis v. Duke Power Co.*, 291 N.C. 19, 34, 229 S.E.2d 191, 200 (1976). The Court shall limit a method of discovery if the Court determines that the "the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." N.C. R. Civ. P. 26(b)(1a).

III.

ANALYSIS

7.     Duke identifies six categories into which the contested Discovery Requests fall: (1) identification of Defendants' key personnel, (2) confirmation of the wording governing each policy at issue, (3) Defendants' handling of prior claims by Duke, (4) Defendants' handling of prior, similar claims by other policyholders, (5) Defendants' prior positions on key policy provisions, and (6) Defendants' understanding of coal ash as a risk and their handling of coal ash claims. The Court addresses Duke's Discovery Requests by category.

A.     Identification of Defendants' Key Personnel

8.     Duke's Joint Request for Production 21 ("RFP 21") asks each Defendant to "[p]roduce all documents, including . . . organizational charts, sufficient to demonstrate the personnel and organizational structure of the department(s) within

[the Defendant's] organization responsible for" (1) underwriting the policies the Defendant issued to Duke at all time periods during which the policies were issued and as of the date of the response to the Discovery Requests, and (2) claims at the time Duke first notified the Defendant about a CCR claim or potential CCR claim relating to the power plants at issue in this case as of the date of the Defendants' response to the Discovery Requests. (Duke's Mem. Law Supp. First Mot. Compel Disc. Ex. B, at 1 [hereinafter "Discovery Requests"], ECF No. 290.2.)

9.     Certain Defendants argue that RFP 21 seeks irrelevant information and is unduly burdensome, contending that any individuals involved in issuing Duke's policies or handling Duke's claims are identified in the underwriting or claims files that have been previously produced. The Court disagrees. Rule 26(b)(1) states that a party can discover "any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" Rule 26(b)(1). This includes discovery concerning "the identity and location of persons having knowledge of any discoverable matter." *Id.* To the extent Defendants know of other employees, past or present, who were responsible or involved in underwriting the policies at issue or handling Duke's CCR claims, whether or not they are identified in underwriting or claim files, Duke is entitled to know the identity of those employees. The Court concludes that Duke's RFP 21 is reasonably calculated to lead to the discovery of admissible evidence, *see King v. Koucouliotes*, 108 N.C. App. 751, 755, 425 S.E.2d 462, 464 (1993) ("Rule 26 requires the disclosure of all persons having knowledge of some discoverable matter[.]" (internal quotations omitted)). To mitigate the possible burden of this

request, the Court will grant Duke's Motion as to RFP 21 with the modification that Defendants may limit their production to organizational charts or other existing summary compilations of responsive information for the relevant departments and time periods.

B.    Confirmation of Governing Policy Language

10.    Duke's Joint Interrogatory 5 asks Defendants whose excess policies "follow form" to another insurance policy to identify the controlling policy.[2]   (Discovery Requests 1.)  Certain Defendants argue that this Request is premature and that they require more time to identify the policies underlying their excess policies.[3]

11.    The Court is cognizant of the complex arrangement of policies in this case, but there are few things more relevant in this action than the terms that govern the policies issued to Duke.   The Court thus concludes that Joint Interrogatory 5 is reasonably calculated to lead to the discovery of admissible evidence and will grant Duke's Motion with respect to this Request.   In recognition of Defendants' concern that their responses to Joint Interrogatory 5 may require an intensive investigation, however, the Court will permit Defendants sixty (60) days from the date of this Order

---

[2]  Excess-level coverage policies like those at the center of this case will often "follow form" to an underlying policy. (Duke's Mem. Law Supp. First Mot. Compel Disc. Ex. E, at 1, ECF No. 290.5.)  For example, Excess Insurer offers Excess Policy B to provide excess coverage on another policy held by Policyholder, Primary Policy A.  Excess Policy B's language defines Excess Policy B's coverage by incorporating Primary Policy A's terms.  Excess Policy B "follows form" to Primary Policy A or is said to provide follow-form coverage.

[3]  Certain Defendants have offered evidence showing that identifying the underlying policy to which an excess-level policy follows form is not always easy.  In some instances, excess policies will have vague references to another policy, e.g., "Policy No. to be advised." (Duke's Mem. Law Supp. First Mot. Compel Disc. Ex. E, at 2.)

to respond to Joint Interrogatory 5. Although the Court considers this deadline reasonable under the circumstances, if, after the exercise of reasonable diligence, Defendants are unable to answer Joint Interrogatory 5 within the time provided for by this Order, the Court will consider an extension of this deadline for good cause shown.

C.    Defendants' Handling of Prior Claims by Duke

12.    Duke's third category of Requests involves Joint Requests for Production 37 ("RFP 37"), 38 ("RFP 38"), and 40 ("RFP 40") and Joint Interrogatory 8. These Requests ask for information related to Defendants' prior handling of claims by Duke under the insurance policies in dispute:

    a. RFP 37 seeks documents "relating to any prior notice of environmental claim, notice of circumstances of a potential environmental claim, or environmental claim [the Defendant] received from Duke under" the policies in dispute. (Discovery Requests 1.)

    b. RFP 38 requests "all documents relating to any payments [the Defendant has] made for claims made under" the policies in dispute. (Discovery Requests 1.)

    c. Joint Interrogatory 8 asks each Defendant to identify all payments previously made under the policies in dispute if the Defendant contends that its policy or policies contain an "aggregate limit of liability applicable to property damage claims and that such aggregate limit has been impaired or exhausted." (Discovery Requests 1–2.)

d. RFP 40 seeks all documents in which a Defendant denied a claim made by Duke under the policies in dispute. (Discovery Requests 2.)

13. Duke argues that these Discovery Requests all seek information relevant to several of Defendants' asserted defenses, "including statute of limitations, late notice, mitigation of damages, and erosion of alleged aggregate policy limits." (Duke's Mem. Law Supp. First Mot. Compel Disc. 4–5 [hereinafter "Duke's Br."], ECF No. 290.)

14. Certain Defendants object to these Requests and argue that Defendants' handling of prior claims under the policies at issue is irrelevant. Certain Defendants also contend that these Requests are unnecessary because "[t]o the extent an Excess Insurer denied coverage to Duke for a prior claim or made a statement about how the policies operate, Duke already has those letters," and the burden imposed on Defendants will outweigh any benefit the discovery will have for Duke. (Certain Defs.' Joint Mem. Law Opp'n Duke's First Mot. Compel Disc. 9, ECF No. 291.)

15. In light of the defenses asserted by Defendants, the Court concludes that RFPs 37, 38, and 40 and Joint Interrogatory 8 are reasonably calculated to lead to the discovery of relevant, admissible evidence. Duke's possession of certain letters from Defendants does nothing to change Duke's entitlement to relevant evidence under Rule 26. *See* N.C. R. Civ. P. 26(b)(1) ("[N]or is it grounds for objection that the examining party has knowledge of the information as to which discovery is sought."). Further, to the extent Defendants are relying on documents in their possession or control that relate to prior claims by Duke under the policies at issue to assert the

defenses identified by Duke (statute of limitations, late notice, mitigation of damages, and erosion of alleged aggregate policy limits), Duke is entitled to discover those documents. Duke's need for the requested information outweighs Defendants' contentions of undue burden. Thus, the Court will grant Duke's Motion as to the third category of the Discovery Requests.

D.   Similar Claims by Other Policyholders

16.   Duke's fourth category of Discovery Requests seeks information concerning Defendants' handling of prior, similar claims by other policyholders:

a. Joint Request for Production 48 ("RFP 48") asks each Defendant to produce "complete claims files . . . excluding any confidential settlement materials, for any environmental claim relating to CCRs" for which the Defendant received notice under excess policies issued or sold by the Defendant before 1987. (Discovery Requests 2.)

b. Joint Request for Production 49 ("RFP 49") seeks complete claims files for any environmental claim on pre-1987 policies for which a Defendant received notice from "the first twenty (20) utilities (or successors)" listed on Attachment A to Duke's Discovery Requests. (Discovery Requests 2.)

c. Joint Interrogatory 11 asks each Defendant to identify every lawsuit involving an environmental claim in state or federal court in North Carolina to which the Defendant was or is a party. (Discovery Requests 2.)

d. Joint Interrogatory 13 asks each Defendant to identify each CCR claim that has been made against the Defendant on or before August 29, 2016 under an insurance policy issued prior to October 31, 1986. (Discovery Requests 2.)

17. Certain Defendants object to these Requests by arguing that the information contained in other policyholders' claims files is irrelevant to any issue in this case. Additionally, by submitted affidavits, Certain Defendants argue that these Requests place undue burden on Certain Defendants' businesses and staff due to the manner in which Certain Defendants keep their records. Finally, Certain Defendants object to the fourth category of Duke's Requests by citing the confidentiality concerns implicated by producing other policyholders' claims files.

18. Duke argues that the information sought is relevant to a series of affirmative defenses raised by Defendants, including consent-to-settle, cooperation, voluntary payments, and late notice. To succeed on these defenses in North Carolina, an insurer must demonstrate that its ability to investigate and defend a claim was prejudiced by the insured's failure to comply with policy provisions. *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 580–81, 573 S.E.2d 118, 125 (2002); *Bond/Tec, Inc. v. Scottsdale Ins. Co.*, 174 N.C. App. 820, 824, 622 S.E.2d 165, 168 (2005).[4] Duke

---

[4] No party has raised the issue of choice of law in this case to date, and no Defendant rejected Duke's contentions that the Court should apply North Carolina law in ruling on Duke's Motion. The Court therefore assumes without deciding for the purposes of this Motion that North Carolina law will govern the substantive rights of the parties in this case. *See* N.C. Gen. Stat. § 58-3-1; *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000); *Cordell v. Bhd. of Locomotive Firemen & Enginemen*, 208 N.C. 632, 640, 182 S.E. 141, 146 (1935).

alleges, however, that excess insurers like Defendants "do not seize the opportunity to investigate and defend" claims like Duke's. (Duke's Br. 6.) Duke's fourth category of Discovery Requests seeks evidence to prove this point and defeat Defendants' prejudice-based defenses.

19. The Court is aware that discovery concerning other policyholders' claims files is hotly contested in insurance litigation and is the subject of much debate. *Compare Parkdale Am., LLC v. Travelers Cas. & Sur. Co. of Am., Inc.*, No. 3:06CV78-R, 2007 U.S. Dist. LEXIS 83480, at *14 (W.D.N.C. Oct. 30, 2007) (allowing discovery of other policyholders' claims), *and Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, No. 89-1701 (CSF), 1990 U.S. Dist. LEXIS 16096, at *8 (D. N.J. Nov. 13, 1990) ("Although there may be a split of authority on this issue, the majority of courts in this district have permitted discovery of the ten earliest and ten most recent environmental actions of other policyholders."), *with Marook v. State Farm Mut. Auto. Ins. Co.*, 259 F.R.D. 388, 395 (N.D. Iowa 2009) ("The Court believes that the extensive discovery requested by Marook regarding the earlier State Farm cases has little or no relevance to the issues presented in this case.").

20. Pertinent to the dispute here, courts of other jurisdictions have, in some cases, allowed discovery of other policyholders' claims files when such discovery is relevant to an issue concerning an industry or party practice. *See Mayfair House Ass'n v. QBE Ins. Corp.*, No. 09-80359-CIV-HURLEY, 2010 U.S. Dist. LEXIS 20253, at *11–13 (S.D. Fla. Feb. 5, 2010) (affirming magistrate judge's order to produce other claims files where the files would "relate to and illuminate the manner in which the

company handles claims of its other policyholders in the general course of its business"); *Morrison Assurance Co. v. U.S. Fire. Ins. Co.*, 515 So. 2d 995, 996 (Fla. Dist. Ct. App. 1987) (affirming order compelling insurer to produce all of its Florida-based files when that information "relat[ed] to [a] practice in the insurance industry" and was "pertinent to the testimony of [the insurer's] witness"); *Aztec Life Ins. Co. of Tex. v. Dellana*, 667 S.W.2d 911, 915–16 (Tex. App. 1984) (finding trial court abused its discretion by denying a motion to compel production of other claims files when those files could be relevant to showing that insurer "consistently follow[ed] [a certain] claims practice" at issue).

21.     The Court has serious concerns that Duke's use of other policyholders' claims files could result in "mini-trials" wherein the specific facts of other policyholders' claims are debated *ad nauseam*.  At the same time, the Court recognizes Duke's need for this information is great.  Each Defendant in this action has pleaded at least one prejudice-based affirmative defense.  These defenses, if successful, would relieve Defendants of liability for Duke's claims.  If Defendants intend to argue and put on evidence showing that they would have investigated or defended Duke's claims and were thus prejudiced by Duke's alleged delay or inaction, Duke has the right to discover evidence relating to Defendants' individual practices and the practices of their industry.

22.     The Court is, however, cognizant of the burden that Duke's fourth category of Requests places on Defendants.  The affidavits submitted by Certain Defendants emphasize the time and cost associated with Duke's fourth category of Requests.

Particularly, Certain Defendants insist that their files are not organized in a manner that allows them to identify the specific basis on which a claim was made. (*See, e.g.*, Aff. Jeffery D. Hayes 4, ECF No. 291.2; Aff. Michael Andrako 3, ECF No. 291.2; Aff. John Glowacki 3, ECF No. 291.2.) After considering the affidavits, the Court concludes as follows.

23. First, with certain modifications, the Court will grant Duke's Motion with regard to RFP 49. The Court will require Defendants to produce the ten (10) most recent and ten (10) earliest claims files involving environmental claims for which Defendants received notice at any time from any of the utilities listed on Duke's Attachment B to Duke's Memorandum of Law in Support of its First Motion to Compel Discovery (i.e., Attachment A to Duke's Discovery Requests). *See Nestle Foods Corp.*, 1990 U.S. Dist. LEXIS 16096, at *10 (affirming magistrate's order requiring production of ten earliest and ten most recent claims files). Thus, each Defendant subject to this Order will be required to produce a total of twenty (20) claims files or the total number of claims files each Defendant has fitting the description herein, whichever is fewer. Though this requirement will impose a burden on Defendants, the Court concludes that Duke's need for evidence that potentially rebuts Defendants' prejudice-based defenses outweighs any hardship placed on Defendants by the Court's modification to RFP 49.

24. Second, the Court will grant Duke's Motion with regard to Joint Interrogatory 11. Certain Defendants have objected to this Request by asserting, among other things, that they do not segregate claims files involving coverage

litigation from other claims files, (Aff. Jeffery D. Hayes, 4), that responding to this Request would require compiling a list of every instance of litigation in the United States and the identity of associated counsel, (Aff. Zoe Marvell 3–4, ECF No. 291.2), or that they do not "possess the ability to search specifically for" North-Carolina-based litigation, (Aff. John Glowacki 7). The Court has some doubt that the consequences of granting Duke's Motion with regard to this Request will be as dire as Certain Defendants contend. Unlike RFPs 48 and 49, Joint Interrogatory 11 seeks only identifying information for previous environmental coverage litigation. The Request is limited in time and scope (since 1980 and in North Carolina) and puts the onus on Duke to conduct the search of public records necessary to discover any further information. *Cf. Parkdale Am., LLC*, 2007 U.S. Dist. LEXIS 83480, at *15 (ordering defendant to identify claims made against it after January 1, 2000 under certain provisions of its policies and to produce any complaint filed pursuant to such claims). To the extent Defendants' own filing systems present obstacles, the Court is confident that records maintained by Defendants' current or previous outside counsel will provide Defendants with adequate assistance to answer Joint Interrogatory 11.

25. Third, the Court will deny Duke's Motion as to RFP 48 and Joint Interrogatory 13. Because Defendants must manually review a file to determine the specific basis of the claim involved, Duke's RFP 48 and Joint Interrogatory 13—which both seek information relating specifically to CCR claims linked to a policy sold before 1987 or October 31, 1986, respectively—would require Defendants to search an exhaustive number of files in order to determine whether they had produced and

identified each and every claims file sought. Furthermore, at the May 2, 2018 hearing on Duke's Motion, Duke indicated that it believed that few or no claims existed that would be responsive to RFP 48 and Joint Interrogatory 13. Duke believed that this fact lightened the actual burden imposed on Defendants. The Court does not agree. If Duke's suspicions are correct, and there are few or no claims responsive to RFP 48 and Joint Interrogatory 13, the Requests put Defendants in the position of searching the entire haystack to confirm the absence or near absence of any needles. The undue burden caused by these Requests outweighs Duke's need for the information sought, particularly in light of the Court's decision to require responses to other Requests in this category. The Court will thus deny Duke's Motion as to RFP 48 and Joint Interrogatory 13.

26. The Court has considered Certain Defendants' confidentiality concerns raised in connection with Duke's fourth category of Requests and concludes that those concerns are adequately addressed by the Stipulated Protective Order entered in this case.

E. <u>Defendants' Prior Public and Private Positions on Policy Provisions</u>

27. Duke's fifth category of Requests seeks information about Defendants' prior public and private positions on the meaning of certain provisions used in the policies issued to Duke and includes requests for public filings, internal memoranda, white papers, published articles, court transcripts, and other related documents. Duke also seeks information concerning Defendants' past use of pollution exclusions. Duke insists that these Requests are relevant because Duke will "likely . . . contend that

some provisions [of the policies at issue] are ambiguous." (Duke's Br. 9.) If the policy provisions are ambiguous, Duke argues, Duke will be entitled to introduce evidence of Defendants' own statements to show the intent of the provisions. Duke also asserts that Defendants' previous interpretations of these policy provisions are relevant to whether the provisions are ambiguous, citing *State Capital Insurance Co. v. Nationwide Mutual Insurance Co.*, 318 N.C. 534, 350 S.E.2d 66 (1986).

28. The Court is not persuaded by Duke's argument. When "the plain language of a contract is clear," i.e., unambiguous, "the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996). "The trial court's determination of whether the language of a contract is ambiguous is a question of law[.]" *Bicket v. McLean Sec.*, 124 N.C. App. 548, 553, 478 S.E.2d 518, 521 (1996). In answering the question of ambiguity, the Court is generally restricted to examining the four corners of the contract. *Lynn v. Lynn*, 202 N.C. App. 423, 431, 689 S.E.2d 198, 205 (2010).

29. The Court does not read *State Capital Insurance Co.* as Duke does; that case looked to other court decisions for help in deciding an issue of concurrent coverage and is inapposite. *State Capital Ins. Co.*, 318 N.C. at 546, 350 S.E.2d at 73. Differences "of judicial opinion regarding proper construction of policy language" may be some evidence of ambiguity, *Brown v. Lumbermens Mut. Cas. Co.*, 326 N.C. 387, 392, 390 S.E.2d 150, 153 (1990), but that rule deals with previous judicial determinations, not positions taken by litigants.

30.     Moreover, "[t]he meaning of ambiguous language within an insurance policy is a question of law for the court." *Register v. White*, 160 N.C. App. 657, 660, 587 S.E.2d 95, 97 (2003), *aff'd*, 358 N.C. 691, 599 S.E.2d 549 (2004); *Markham v. Nationwide Mut. Fire Ins. Co.*, 125 N.C. App. 443, 452, 481 S.E.2d 349, 355 (1997). "Any ambiguity as to the meaning of words used in an insurance policy must be construed in the policyholder's favor." *Henderson v. U.S. Fid. & Guar. Co.*, 346 N.C. 741, 745, 488 S.E.2d 234, 237 (1997); *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970).

31.     On the basis of these legal principles, the Court will deny Duke's Motion as to Duke's fifth category of Discovery Requests. The meaning of any disputed policy provisions in this case will be determined first and foremost by the plain language of the policies at issue. If the policies are held to be ambiguous, ambiguity will be construed in favor of coverage, and thus Duke's favor, where possible. Defendants' previous interpretations of these provisions is not relevant to the Court's determination of ambiguity or, if necessary, the Court's subsequent construction of the policy. Likewise, Defendants' previous uses of certain policy provisions, like pollution exclusions, are not relevant to the Court's analysis.

32.     Furthermore, even if Duke's fifth category of Discovery Requests was reasonably calculated to lead to the discovery of admissible evidence, the Court concludes, in its discretion and for the reasons explained above, that such evidence would be of minimal use in this litigation. Duke's need for this evidence would be far

outweighed by the burden imposed on Defendants. The Court therefore denies Duke's Motion as to the fifth category of Discovery Requests.

F. Defendants' CCR knowledge

33. Duke's sixth and final category of Discovery Requests seeks information about Defendants' "(i) knowledge of CCRs before and when they sold policies to Duke, (ii) internal documents relating to [Defendants'] consideration of insurance coverage for CCR liability under occurrence policies like those at issue, and (iii) awareness of CCR laws and regulations." (Duke's Br. 10.) Duke identifies three bases for its sixth category of Discovery Requests. The Court addresses each in turn.

34. First, Duke argues that Defendants' "knowledge of subsequent CCR laws and regulations is relevant to refute" Defendants' assertion that Duke failed to mitigate its losses. (Duke's Br. 11.) The Court disagrees. In a breach of contract case, the "party who is wronged is required to use due care to minimize [its losses]." *Thermal Design, Inc. v. M&M Builders, Inc.*, 207 N.C. App. 79, 89, 698 S.E.2d 516, 523–24 (2010) (quoting *First Nat'l Pictures Distrib. Corp. v. Seawell*, 205 N.C. 359, 360, 171 S.E. 354, 355 (1933)). Defendants' failure-to-mitigate defense is thus focused on Duke's conduct. Defendants' knowledge of CCRs is irrelevant to that defense.

35. Second, Duke suggests that Defendants' internal statements regarding CCR liability coverage may be inconsistent with Defendants' positions in this lawsuit and contends that the jury and Duke are entitled to consider such inconsistencies. For the reasons stated in connection with Duke's fifth category of Discovery Requests, however, the Court also disagrees with Duke's second argument. The interpretation

of the policies between Duke and Defendants is a matter of law for the Court to decide, and Defendants' prior positions on CCR liability under other policies is not relevant to that determination.

36. Finally, Duke argues that evidence of Defendants' prior knowledge of CCRs and CCR regulations is relevant to Defendants' allegations that Duke misrepresented material facts when purchasing the policies at issue. A majority of Defendants have pleaded defenses asserting such misrepresentations. Although Duke denies making any misrepresentations, Duke also intends to argue that any alleged misrepresentations were not material and thus do not allow Defendants to avoid liability. According to Duke, those Defendants asserting misrepresentation-based defenses knew about CCRs at the time they issued policies to Duke. Thus, even if Duke made misrepresentations concerning CCRs, Duke argues those misrepresentations were not material because they would not have influenced Defendants, who already knew the truth. *See Goodwin v. Inv'rs Life Ins. Co. of N. Am.*, 332 N.C. 326, 331, 419 S.E.2d 766, 769 (1992) ("[A] representation in an application for an insurance policy is deemed material if the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract, or in estimating the degree and character of the risk[.]" (internal quotation marks omitted)).

37. The current record does not reflect what misrepresentations Defendants believe Duke made. Without further details, the Court is not convinced that Duke's sixth category of Discovery Requests is reasonably calculated to lead to the discovery

of admissible evidence on this issue.  If Defendants argue that Duke misrepresented facts and circumstances concerning Duke's power plants, documents and information concerning Defendants' general knowledge of CCR risks and regulations would not be pertinent to the alleged misrepresentations.  If, on the other hand, Defendants contend Duke misrepresented future prospects concerning possible CCR liabilities due to regulations or risks, those allegations would not involve a material misrepresentation of fact but an opinion or representation relating to future prospects, *see Ragsdale v. Kennedy*, 286 N.C. 130, 139, 209 S.E.2d 494, 500 (1974); *Brewer v. Union Cent. Life Ins. Co.*, 214 N.C. 554, 558, 200 S.E. 1, 3 (1938), and the discovery Duke seeks would still be irrelevant.

38.    Furthermore, at least three of Duke's four Discovery Requests in this category are substantially broader than necessary for purposes of defeating Defendants' misrepresentation defense.  Joint Request for Production 26 requests "all documents" Defendants have concerning CCRs and CCR regulations, including EPA rules that became final in 2015.  (Discovery Requests 4.)  Joint Request for Production 28 requests "all documents communicated internally within your organization . . . relating to coverage or potential coverage for claims relating to CCRs."  (Discovery Requests 4.)  Joint Interrogatory 10 asks each Defendants to "identify all regulated electric utilities" to which the Defendant issued a policy of insurance between December 31, 1971 and October 31, 1986.  (Discovery Requests 4.)  These Discovery Requests seek far more information than what Defendants knew about CCRs before issuing policies to Duke.

39.     For the foregoing reasons, the Court will deny Duke's Motion as to the sixth category of Discovery Requests. The Court is prepared to revisit this issue as discovery proceeds for good cause shown.

G.     The AEGIS Defendants

40.     In addition to joining Certain Defendants in objecting to Duke's Motion, the AEGIS Defendants make two arguments concerning their own unique circumstances.

41.     First, the AEGIS Defendants argue that Duke's Requests directed to ACI and Ranger are not reasonably calculated to lead to the discovery of admissible evidence because ACI and Ranger are merely fronting insurers and AEGIS is the real party in interest. By affidavit, the AEGIS Defendants submit that ACI's and Ranger's names appear on their respective, in-dispute policies, and that ACI and Ranger executed the policies, but that the extent of ACI's and Ranger's involvement ended there. Instead, AEGIS underwrote, received the premiums on, and received claims reports for the policies. (Aff. Stephen P. Byrne ¶¶ 7–10, ECF No. 292.1.)[5]

42.     At the hearing on Duke's Motion, in response to the AEGIS Defendants' arguments, counsel for Duke argued that Duke's Requests should apply equally to Ranger and ACI because Ranger and ACI are distinct companies that each issued the policies in question. As such, Duke insisted, Ranger and ACI are liable to Duke under

---

[5] The AEGIS Defendants also contend that complying with Duke's Discovery Requests will be unduly burdensome for ACI for reasons substantially similar to those offered by Certain Defendants. The AEGIS Defendants' arguments on this point do not raise any issues that the Court has not already addressed. Thus, the Court will not alter its decisions herein on the basis of these arguments.

the policies regardless of AEGIS's obligations.  Counsel for the AEGIS Defendants disagreed with these assertions.

43.     Having considered each side's arguments, the Court is not prepared to conclude that ACI and Ranger are exempt from Duke's Discovery Requests.  ACI's and Ranger's names appear on, and both companies signed, the policies in question. (Aff. Stephen P. Byrne ¶¶ 6, 8.)   To the extent AEGIS's, ACI's, and Ranger's arrangements with each other mean AEGIS, and not ACI or Ranger, has possession, custody, or control of documents responsive to Duke's Discovery Requests, the AEGIS Defendants can work together and with Duke to produce all necessary responsive documents.  To the extent the Court grants Duke's Motion, the obligations arising under this Order will apply equally to ACI and Ranger.

44.     The AEGIS Defendants' second argument concerns Duke's Requests for other policyholders' claims files.  The AEGIS Defendants contend that these Requests do not apply to them because Duke seeks evidence to rebut prejudice-based defenses, and, according to the AEGIS Defendants, they have not pleaded a defense that requires a showing of prejudice.

45.     The AEGIS Defendants have, however, each asserted an identical affirmative defense that implicates their consent.  Specifically, the defense asserts that Duke has not become legally obligated to pay costs under an adjudication or compromise, and, in the alternative, "to the extent Duke might be found to have become legally obligated to pay any . . . costs by 'compromise,' such compromise was

not" made with the AEGIS Defendants' consent. (AEGIS's, ACI's, and Ranger's Mem. Law Opp'n Duke's First Mot. Compel Disc. 7 [hereinafter "AEGIS Br."], ECF No. 292.)

46. The AEGIS Defendants' policies require the AEGIS Defendants to pay any "Ultimate Net Loss" that Duke becomes legally obligated to pay for certain kinds of damage. (AEGIS Br. 8.) The policies define "Ultimate Net Loss" as all sums Duke is obligated to pay due to (i) an adjudication, or (ii) a "compromise with the consent of the [respective AEGIS Defendant.]" (AEGIS Br. 8.) The AEGIS Defendants use this language to argue that their consent was a requirement for any obligation to be considered an "Ultimate Net Loss" that their policies would cover. In such a situation, the AEGIS Defendants contend, consent is a required element for coverage, not a condition which exempts a claim from coverage, and North Carolina law does not require a showing of prejudice.

47. The AEGIS Defendants cite only California case law or cases applying California law to support their distinction between insurance policies where consent is an element of coverage versus those where consent is a condition precedent to coverage. The Court has found no North Carolina case drawing such a distinction. The practical differences between policies with consent-to-settle clauses, which allow an insurer to avoid liability upon a showing of prejudice under North Carolina law, *see, e.g.*, *Branch v. Travelers Indem. Co.*, 90 N.C. App. 116, 119, 367 S.E.2d 369, 371 (1988), *modified and aff'd*, 324 N.C. 430, 378 S.E.2d 748 (1989), and policies that consider consent an element of coverage are not readily apparent—both policies are

designed to exclude coverage of compromises entered into without the insurer's consent.

48. North Carolina courts favor finding coverage and appear to require a showing of prejudice when a lack of consent is asserted as grounds for denying coverage. *See Great Am. Ins. Co. v. C.G. Tate Constr. Co.*, 303 N.C. 387, 395–96, 279 S.E.2d 769, 774–75 (1981); *Branch*, 90 N.C. App. at 119, 367 S.E.2d at 371. The Court is therefore not prepared to determine that the AEGIS Defendants will not be required to show prejudice as a part of their above-discussed affirmative defenses, should the evidence show that Duke became obligated under a compromise without the AEGIS Defendants' consent. Thus, the AEGIS Defendants will be required to comply with the terms of this Order, including those provisions concerning other policyholders' claims files.

49. **WHEREFORE**, the Court, in the exercise of its discretion and consistent with its conclusions above, **GRANTS in part** and **DENIES in part** Duke's Motion and hereby **ORDERS** as follows:

    a. With regard to Duke's first category of Discovery Requests seeking the identity of key personnel, Subject Defendants[6] identified on Exhibit A hereto shall produce to Duke, within thirty (30) days of the date of this Order, organizational charts, or other existing compilations of responsive information, sufficient to demonstrate the personnel and

---

[6] The term "Subject Defendants" shall mean those Defendants identified on Exhibit A to Duke's brief supporting its Motion to Compel—incorporated as Exhibit A to this Order—that dispute the particular Discovery Request at issue, i.e., those Defendants designated with a "Y" in the row corresponding with the particular Discovery Request.

organizational structure of Subject Defendants' departments responsible for underwriting and claims, as those terms are defined by RFP 21, during the relevant time periods identified by RFP 21.

b. With regard to Duke's second category of Discovery Requests seeking the wording of each policy at issue, Subject Defendants shall provide amended verified answers to Joint Interrogatory 5 of Duke's First Set of Joint Interrogatories to All Defendants within sixty (60) days of the date of this Order.

c. As to Duke's third category of Discovery Requests seeking information of Defendants' handling of prior claims by Duke, Subject Defendants shall:

    i. Conduct a reasonable search for documents within their possession, custody, or control that are responsive to RFPs 37, 38, and 40 of Duke's First Set of Joint Requests for Production to All Defendants and produce to Duke all nonprivileged documents discovered within thirty (30) days of the date of this Order and, as soon as reasonably practicable thereafter, a log of any documents withheld or redacted on the basis of any claimed privilege; and

    ii. Provide amended verified answers to Joint Interrogatory 8 of Duke's First Set of Joint Interrogatories to All Defendants within thirty (30) days of the date of this Order.

d. As to Duke's fourth category of Discovery Requests concerning Defendants' handling of prior, similar claims by other policyholders:

    i. Each Subject Defendant shall conduct a reasonable search for documents within its possession, custody, or control that are responsive to Duke's RFP 49, as modified by this Order, and shall produce to Duke, within sixty (60) days of the date of this Order, the ten (10) most recent and ten (10) earliest claims files involving environmental claims for which Defendant received notice at any time from any of the utilities listed on Duke's Attachment B to Duke's Memorandum of Law in Support of its First Motion to Compel Discovery (i.e., Attachment A to Duke's Discovery Requests). This production shall not be per utility, and thus each Subject Defendant shall produce a total of twenty (20) claims files or the maximum number of claims files, whichever is fewer, in their possession, custody, or control that are responsive to RFP 49, as modified by this Order. If a Subject Defendant is unable to comply with this provision of this Order by the set deadline, the Court will consider an extension of time for good cause shown.

    ii. Subject Defendants shall provide Duke with amended verified answers to Joint Interrogatory 11 of Duke's First Set of Joint Interrogatories to All Defendants within sixty (60) days of the date of this Order.

iii. Subject Defendants shall not be required to respond to RFP 48 of Duke's First Set of Joint Requests for Production to All Defendants or Joint Interrogatory 13 of Duke's First Set of Joint Interrogatories to All Defendants.

e. As to Duke's fifth category of Discovery Requests seeking prior positions on key policy provisions, Subject Defendants shall not be required to respond to Requests for Production 47, 57, 61, or 64 of Duke's First Set of Joint Requests for Production, Hartford Request for Production 3, or Joint Interrogatory 17 of Duke's First Set of Joint Interrogatories to All Defendants.

f. As to Duke's sixth category of Discovery Requests concerning Defendants' understanding or knowledge of CCRs and CCR regulations, Subject Defendants shall not be required to respond to Requests for Production 26, 27, or 28 of Duke's First Set of Joint Requests for Production or Duke's Joint Interrogatory 10 of Duke's First Set of Joint Interrogatories to All Defendants.

g. The Court finds that all parties' positions on the Motion were substantially justified. No party shall be required to pay the expenses incurred by another party in connection with the Motion.

**SO ORDERED**, this the 5th day of June, 2018.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
  for Complex Business Cases

# Exhibit A

## Insurers Subject to Duke's First Motion to Compel

## (as of 4/12/2018)

Case No.2017CVS5594 ECF No. 290.1 Filed 04/12/2018 12:59:27 N.C. Business Court

*Duke Energy Carolinas, LLC et al. v. AG Insurance SA/NV et al.*,
Case No. 17-CVS-5594

| Disputed Issues (Y = In Dispute) | AEGIS | AG Insurance (L'Etoile) | Ageas (Bishopsgate) | AIG Property Casualty | Alleanza (Lloyd Italico) | Allianz Global | Allianz Underwriters | Allstate | American Home | Arrowood | AGF | Berkshire Hathaway | Century (Cal Union) | Columbia Casualty | Continental | Employers Mutual | Federal Insurance Co. | Fireman's Fund | First State | General RE | Generali (Le Continent) | Lexington | Old Republic | Pacific Employers | TIG (Ranger) | Twin City | US Fire |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Confirmation of Policy Wording** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Interrogatory 5 - Follow Form | | Y | Y | | Y | Y | Y | Y | | | Y | | Y | Y | Y | Y | Y | Y | Y | Y | | | | Y | | Y | Y |
| **Identification of Insurers' Key Personnel** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| RFP 21(a) - Underwriters | | | | Y | | Y | Y | | Y | | | | Y | | | Y | Y | Y | | | Y | | Y | | | Y | Y |
| RFP 21(b) - Claims | | | | Y | Y | Y | Y | | Y | | | | Y | | | Y | Y | Y | | | Y | | Y | | | Y | Y |
| **Insurers Understanding of Coal Ash** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| RFP 26 - CCR Regulations | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| RFP 27 - Pre-1987 CCR Documents | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| RFP 28 - Coverage for CCRs | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| Interrogatory 10 - Identify other Utilities | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| **Insurers' Handling of Prior Claims by Duke** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| RFP 37 - Other Environmental Claims | | Y | Y | Y | | Y | Y | Y | Y | | | Y | Y | Y | Y | Y | Y | Y | | | Y | | Y | | | Y | Y |
| RFP 38 - Claims Payments | | | | Y | | Y | Y | | Y | | | | | | | | Y | | | | Y | | | | | | |
| RFP 40 - Claim Denials | | Y | Y | Y | | | Y | Y | | | | | Y | Y | Y | | Y | | Y | | Y | | Y | | | Y | Y |
| Interrogatory 8 - Aggregate limit payments | | | | Y | | Y | Y | | Y | | Y | | | | | | Y | | Y | | | | Y | | | | |
| **Insurers' Prior Position on Key Policy Provisions** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| RFP 47 - Non-cumulation of limits | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| RFP 57 - Earliest Policy w/ Pollution Exclusion | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| RFP 61 - Ordinary costs of business | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| RFP 64 - Number of Occurrences | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | N | Y | Y | Y |
| Hartford RFP 3 - Dam/Impoundment Exclusion | | | | | | | | | | | | | | | | | | | | Y | | | | | Y | | |
| Interrogatory 17 - First year with Pollution Exclusion | | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| **Handling of Similar Claims** | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| RFP 48 - Other CCR Claims | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| RFP 49 - Other Utility Environmental Claims Files | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y |
| Interrogatory 11 - Other NC litigation | | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | | Y | Y | Y |
| Interrogatory 13 - Identify Other CCR Claims | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y | Y |